RECEIVED

JUL 2 6 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

FILED

AUG - 1 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAUREN BROWNING, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. SA-05-CA-0245-FB |
| | § | |
| SOUTHWEST RESEARCH INSTITUTE | § | |
| Defendant. | § | |

## DEFENDANT SOUTHWEST RESEARCH INSTITUTE'S MOTION TO EXCLUDE THE TESTIMONY OF MARGARET S. STOCKDALE, PH.D.

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant, Southwest Research Institute (hereinafter "SwRI," "Institute," or "Defendant"), and files this its Motion to Exclude the Testimony of Margaret S. Stockdale, Ph.D., and in support thereof would respectfully show the Court as follows:

### I. INTRODUCTION

Plaintiff Lauren Browning (hereinafter "Plaintiff" or "Browning") has filed this action against Defendant Southwest Research Institute asserting violations of the Equal Pay Act and Title VII. Plaintiff has designated Margaret S. Stockdale, Ph.D. (hereinafter "Stockdale") as an expert witness regarding gender bias within the Institute. As will be illustrated, Stockdale's opinions are little more than rank conclusions and gross speculation. Instead of objectively analyzing SwRI's performance evaluation process, Stockdale makes broad generalizations and selectively uses facts in a weak attempt to support her subjective belief that it is more likely than not that Browning was stereotyped at SwRI. Subjectivity may be the "bedrock of stereotyping," to use Stockdale's phrase, but it is also the bedrock of inadmissible expert testimony. As such, her opinions are fundamentally flawed and do not meet the Federal Rules of Evidence's threshold for expert testimony. Furthermore, Stockdale's opinions serve to impermissibly shift

31150829.2

- 1 -

the burden of proof as to whether Plaintiff was discriminated against and thus their probative value is outweighed by the danger of confusing the issues or misleading the jury. Therefore, Stockdale should not be allowed to testify at trial and her report should be stricken.

As stated, Plaintiff has designated Stockdale as her expert on whether Plaintiff was stereotyped during her employment with Defendant. Stockdale's report is attached as **Exhibit A** (hereafter "Stockdale Report") and identified selections from Stockdale's deposition are attached as **Exhibit B** (hereafter "Stockdale Deposition"). Stockdale's opinions herein are no more than gross speculation and generalizations with no basis in any identifiable methodology. As such, her opinions fail to meet the requisite standards of reliability for the admission of expert testimony and their probative value is outweighed by the danger of confusion of the issues and misleading of the jury and, therefore, should be stricken.

*Nearly two months after* Plaintiff's deadline to submit her expert reports under the Court's Amended Scheduling Order dated March 6, 2006, Stockdale hand delivered to Defendant's counsel on June 26, 2006 (the day of and at the commencement of Stockdale's deposition), a supplemental report dated June 24, 2006, *See* **Exhibit C**, Stockdale "Supplemental" Report. Her "supplemental" report was not in fact supplemental, was incomplete, and should, in addition to the underlying reasons applicable to the original report, thus be excluded as untimely.

## II. BACKGROUND AND STATEMENT OF FACTS

Browning was hired by the Institute on or about December 7, 1998. During her employment, Browning's performance was evaluated on a yearly basis. The Institute's evaluation process begins with the employee's self evaluation in which the employee describes his or her work during the evaluation period. *See* **Exhibit D**, Deposition of Dr. English Pearcy, at p.57 ("Pearcy Deposition"). This self evaluation is then provided to the employee's manager

for use, along with the manager's personal observations, in forming an evaluation. The employee's manager then presents a balanced performance evaluation to the group of managers and directors. The managers and directors for whom the employee worked also make observations regarding the employee's performance in light of the employee's responsibilities, the employee's work during the evaluation period, and the Institute's Career Ladder Guidelines. *See* **Exhibit D**, Pearcy Deposition, at p.57-58. The group collectively arrives at the employee's performance rating that is then signed by the employee's manager and reviewed by the vice-president of that employee's cost center. *See* **Exhibit D**, Pearcy Deposition, at p.57, 62. The vice-president is not included in the group discussion so that he or she has an independent view from that of the group. *See* **Exhibit D**, Pearcy Deposition, at p.62.

Furthermore, the Institute maintains an extensive human resources department which provides direction and support to the various Divisions of the Institute as regards employment practices and procedures. For example,

- SwRI Equal Employment Opportunity Policy Statement
- SwRI Complaint Procedure
- SwRI Sexual Harassment Policy
- SwRI Standards of Conduct Policy
- SwRI Overview of Staff Performance Evaluation Process
- SwRI Career Ladders and Job Guidelines
- SwRI Salary Administration Program
- SwRI Supervisory Management Training Program
- SwRI Salary Review and Analysis Training Program
- SwRI Affirmative Action Plan
- Budhi Sagar Memorandum of 2/26/97
- Advancement Policies
- Supervisor Training Reports

*See* **Exhibit A,** Stockdale Report at 69; **Exhibit E,** Lundquist Report at Appendix D p.47 (each

document identifying various SwRI policies produced to Plaintiff and provided to experts).

### III.  ARGUMENTS AND AUTHORITIES

**A.     Stockdale's Opinions Do Not Satisfy the *Daubert* Test**

Under the Federal Rules of Evidence, an expert may offer his or her opinion "if (1) the

testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the witness has applied the principles and methods reliably to the

facts of the case." FED. R. EVID. 702.  Under the *Daubert* standard, a trial court serves as a

"gatekeeper" and must examine whether the expert is proposing to testify to (1) scientific

knowledge that (2) will assist the trier of fact to understand or determine a fact issue.  *Daubert v.

Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Under the first prong, the court must make

an independent assessment to "ensure that any and all scientific testimony or evidence admitted

is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  The Supreme Court identified four

non exclusive factors to guide courts in making this assessment on whether the particular

scientific theory or study is reliable: (1) empirical testability; (2) whether the study or theory has

been published and subjected to peer review; (3) whether the known or potential rate of error is

acceptable; and (4) whether the method is generally accepted in the scientific community.  *Id.*

Under the second prong, the court must be mindful of whether the probative value of evidence is

"substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury." *Daubert*, 509 U.S. at 595.

> **1.      Stockdale is not qualified to offer an opinion as to whether Browning
>           actually was discriminated against.**

The purpose of an expert witness is *not,* as Plaintiff attempts to do herein with the

testimony of Stockdale, to alter and undermine the fundamental legal standards of Title VII and

EPA law by impermissibly shifting the burden of proof from plaintiff to defendant.  For this reason Courts have not allowed experts to testify as to whether or not the plaintiff actually suffered harassment or discrimination or to otherwise shift the burden of proof to the employer based on a presumption of discrimination.  *See EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 462 (S.D.N.Y. 2004); *Voisine v. Danzig*, No. 98-340-P-DMC, 1999 WL 33117132, at *5 (D. Me. Oct. 26, 1999).  Further, courts have also refused to allow experts to testify as to whether an individual employee actually suffered from discrimination.  *See, e.g., Collier v. Bradley University*, 113 F. Supp. 2d 1235, 1246 (C. D. Ill. 2000); *Voisine*, 1999 WL 33117132, at *5; *Camp v. Lockheed Martin Corp.*, No. H-97-1938, 1998 WL 966002, at *3 (S.D. Tex. Dec. 29, 1998).  Some courts that have allowed expert testimony by psychologists and sociologists have limited this testimony to opinions on hiring techniques, promotion standards, and stereotypes in the workplace generally.  *See Morgan Stanley*, 324 F. Supp. 2d at 462; *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1263 (N.D. Cal. 1997).

Not only is shifting the burden legally impermissible, but it is equally clear that Stockdale is wholly unqualified to even opine on such a final conclusion of discrimination.  Stockdale conceded that she has *never* been admitted previously to give testimony as to whether a particular plaintiff suffered from discrimination.  *See* **Exhibit B**, Stockdale Deposition, p.10, 114-15.  In fact, Stockdale herself has previously stated, "Social framework analysis differs from other forms of expert testimony in that *it does not* attempt to conclude that a disputed fact or claim is or is not supported by the research.  Instead, it uses research to help jurors understand social phenomena that may be misunderstood by laypersons."  *See* **Exhibit B**, Stockdale Deposition, p.113.  Here, Stockdale chooses not to heed her own advice but makes the impermissible leap to opine that it is "reasonable to conclude that [Browning] may have been

stereotyped." *See* **Exhibit B**, Stockdale Deposition, p.114. In rendering this opinion, Stockdale

claims that she is not rendering an opinion as to whether Browning was discriminated against.

She claims, instead, that she is making a conclusion about whether it is reasonable to conclude

that Browning was stereotyped. This is a distinction without a difference. Since Stockdale is not

qualified to render an opinion as to whether or not Plaintiff suffered from discrimination at the

Institute, and, in fact, admits that her "social framework analysis" *is not* used for such purpose,

her testimony should be excluded.[1]

    **2.**    **Stockdale's methodology is flawed and unreliable.**

Furthermore, courts will refuse to admit psychologists and sociologists where it is

demonstrated that their methodology is flawed. *See, e.g., Daubert*, 509 U.S. at 590 (noting that

expert testimony must be based on the "methods and procedures of science" to be considered

reliable); *Collier*, 113 F. Supp. 2d at 124 (excluding an expert psychologist's testimony and

noting that it was "far from clear" that the psychologist even knew what methodology she

applied to reach her opinions); *Camp*, 1998 WL 966002, at *3 (excluding an industrial

psychologist while recognizing that its was "inconsistent with the scientific method" to ignore

significant portions of a report that contradicted the expert's opinions and that the expert

"disregarded his own disclaimer about generalizations" in forming his opinion).

Stockdale's opinions are not the product of reliable principles and methods that she has

reliably applied to the facts of the case. Indeed, the facts and Stockdale's so called methodology

are quite to the contrary and even Stockdale herself cannot provide reliable, indeed *any*,

probability or percentage likelihood of her conclusions being true. *See* **Exhibit B**, Stockdale

---

[1] Further reflecting the lack of qualification and reliability of Stockdale and her report is her admission that the majority of empirical studies on which she relies for sex stereotyping are based on "stranger –to –stranger undergraduate college students" – an environment wholly different than the highly educated and personal (non-stranger) environment of SwRI's Division 20 . *See* **Exhibit B**, Stockdale Deposition, p.134-37.

31150829.2                 - 6 -

Deposition, p.125-26.[2]   Stockdale made no attempt to objectively analyze how the Institute's evaluation process was flawed or how it failed to reduce the potential effects of stereotypes. Instead, Stockdale simply presumes that the Institute's evaluation process was inherently subjective, allowing managers to circumvent the policies the Institute had in place to prevent subjectivity and bias. Inexplicably (and fatal to Stockdale's reliability as an expert), there is no meaningful discussion of the Institute's extensive human resource policies and procedures in Stockdale's report. Rather, Stockdale pulls highly selective anecdotes supplied by Plaintiff about her tenure at the Institute and attempts to draw some conclusion from them with no methodology apparent other than her own subjectivity and experience.

For example, Stockdale makes no attempt to demonstrate how the Institute's evaluation process is "permeated with subjectivity" other than making a few unsupported generalizations about the Institute's performance ratings. *See* **Exhibit A**, Stockdale Report at p.27   There is nothing scientific about Stockdale's musing in this regard. She does not point to scientific literature stating that this particular type of performance rating system is inherently more subjective than any other system. In fact, as pointed out by Dr. Lundquist, the Institute's rating system closely resembles a technique known as Management by Objectives, which has been found to be very effective in managing performance. *See* **Exhibit E**, Lundquist Report at p.8. Yet, there is no discussion in Stockdale's report of this technique and certainly no discussion of any research, should it exist, that demonstrates that this technique is inherently subjective.

Further, Stockdale fails entirely to explain how performance ratings are assigned or to examine the numerous procedures that the Institute had in place to minimize the potential effects

---

[2] At one point Stockdale describes the point at which a threshold has been passed to infer stereotyping has occurred as "a global judgment." Although, Stockdale asks to "strike that" there is no way to strike the raw fact that her entire analysis is based on subjectivity that cannot be empirically measured. *See* **Exhibit B**, Stockdale Deposition, p.186.

of stereotypes on the rating system.  As noted by Dr. Lundquist, the Institute combined this relatively standard "expectation" scale with clear expectations and goals that were set by both Browning and management and that were the subject of bi-weekly Minimal Reports and performance discussions throughout the evaluation period. *See* **Exhibit E**, Lundquist Report at p.10; *see also* **Exhibit F**, Performance Evaluation Ratings for 2002 Salary Administration Program.  Stockdale, predictably, makes no mention of these reports, performance discussions, evaluation process or human resource policies.

Moreover, Stockdale correctly describes three methods by which what she classifies as descriptive sex stereotypes can be minimized but makes no attempt to analyze whether or not these methods have been followed by the Institute.  *See* **Exhibit A**, Stockdale Report at p.12. Again, Stockdale's election to list but not examine SwRI's use of these minimizing practices (e.g. specific job relevant information, job context as gender neutral, and training of evaluators) is not surprising, as all three practices (and far more) are Institute standard practices.  *See* **Exhibit A,** Stockdale Report at 69 (identification of SwRI personnel policies); **Exhibit E,** Lundquist Report at Appendix D p.47 (identification of SwRI personnel policies)); **Exhibit E,** Lundquist Report at p. 7-27. **Exhibit F,** Performance Evaluation Ratings for 2002 Salary Administration Program.  Remarkably, despite this wealth of information available to Stockdale she chooses to simply note that while certain SwRI practices "are laudable, *if* conducted in a piecemeal fashion with little commitment from management they are not sufficient..."  Glaringly absent from Stockdale's report is any discussion that, in fact, such practices are anything but "piecemeal" or absent full management support.  **Exhibit A,** Stockdale Report at 24.  This "methodology of analysis" does not withstand scrutiny.  As stated by the court in *Camp v. Lockheed Martin Corp.*, No. H-97-1938, 1998 WL 966002, (S.D. Tex. Dec. 29, 1998), to ignore

31150829.2                                     - 8 -

significant portions of a report that contradicted the expert's opinions is "inconsistent with the scientific method" *Id.* at *3.[3]

There is simply no discernable methodology employed by Stockdale to support her subjective conclusion that it is more likely than not that Plaintiff was the victim of stereotypes at the Institute.  Rather, Stockdale's "opinions" and report are more akin to an advocate's selective use of facts to bolster his or her position, not an objective analysis based on a reliable scientific method.  As such, Stockdale's report and testimony is a work of fiction, global speculation, grossly unreliable and must, for these reasons, be excluded.

**B.    Any probative value of Stockdale's opinions is substantially outweighed by the danger of confusing the issues and misleading the jury and should be excluded under *Daubert* and FED. R. EVID. 403.**

Without some basis in an accepted scientific methodology, the danger of confusing the issues and misleading the jury substantially outweighs the probative value of Stockdale's opinions, and her opinions will not assist the trier of fact to understand or determine a fact issue. *See* FED. R. EVID. 403; *Daubert*, 509 U.S. at 595; *Camp*, 1998 WL 966002, at *4.  To illustrate, in *Camp*, the court held that the expert's opinions that unconscious age stereotyping "potentially influenced" the employer's decisions and that the decisions were "potential indicators of age bias" were not relevant to whether the employer intentionally discriminated against the plaintiff because of his age.  1998 WL 966002, at *3.  Moreover, the court held that even if the expert's opinions were otherwise relevant and reliable they should be excluded because their probative value was outweighed by the danger of confusing the issues or misleading the jury.  *Id.* at *4.  The court noted that there was a "significant danger" that the expert's opinions would "cause the

---

[3] The availability of this information but Stockdale's failure to fairly evaluate it is inexcusable.  *See* **Exhibit B,** Stockdale Deposition, p.198-201.

jury to believe erroneously that [the plaintiff] does not need to prove intentional, individual discrimination." *Id.*

A similar, perhaps identical, danger exists here. Stockdale's opinions ask the jury to begin with the expectation that the Institute discriminates because she perceives it as a "masculine environment" and seeks to compel the Institute to prove that it had policies in place to prevent such discrimination. *See* **Exhibit A**, Stockdale Report at p.24. First and foremost, that is *not* the legal standard applicable to a Title VII or EPA case – it is not the Defendant's burden to establish that it did not do something. Yet this is what Plaintiff and Stockdale wrongfully attempt to accomplish. Second, Stockdale asks the jury to accept the proposition that the Institute discriminates based on incomplete and unreliable anecdotes with out any discussion, recognition or mention of the numerous policies and procedures employed by the Institute to minimize any alleged potential for discrimination.

Under no theory can Stockdale's testimony and report be viewed as assisting the jury in determination of a fact issues. A report replete with incomplete[4] information, selective facts, and wholesale disregard for the existence of the various factors touted as minimizing the potential for stereotyping will only mislead the jury. Such undue prejudice cannot be abated and should not be permitted by this Court.

C.     **Stockdale's "Supplemental" Report should be excluded as untimely.**

Even if Stockdale is allowed to testify, her report dated June 24, 2006 should be excluded as untimely. Under the Federal Rules of Civil Procedure, a party must supplement the information contained in its expert's report if it "learns that in some material respect the information disclosed is incomplete or incorrect." FED. R. CIV. P. 26(e)(1). A party may not

---

[4] Yet another example of the incomplete and subjective nature of Stockdale's report is the failure to examine the employment practices and history of Plaintiff's immediate supervisor as regards *other* women in his department. *See* **Exhibit B**, Stockdale Deposition, p.178-79. .

however, use a supplemental report to circumvent the party's obligation to timely tender a complete expert report or otherwise disclose information that should have been disclosed in the expert's initial report. *See Reid v. Lockheed Martin aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (excluding an expert report as untimely despite the fact that the report was produced within Rule 26(e)(1)'s requirements and noting that Rule 26(e)(1) does not bestow upon a party "unfettered freedom to rely on supplements produced after a court-imposed deadline"); *Collier*, 113 F. Supp. 2d at 1242 (excluding a "supplemental" report that sought to add matters and authorities not discussed in the original report).

Stockdale's "supplemental" report is not supplemental at all but instead seeks to add text and analysis that should have been contained in Stockdale's initial report. Stockdale's "supplemental" report seeks to opine on specific deficiencies in the Institute's evaluation policy, presumably as an acknowledgment that the discussion of the Institute's policies in her initial report consisted of nothing more that gross generalization and unsupported speculation. *See* **Exhibit C**, Stockdale "Supplemental" Report at p.29. These new opinions, however, are not based on information that was acquired subsequent to her initial report. As such, they should have been included in Stockdale's initial report, and Stockdale cannot circumvent this Court's deadlines by introducing new opinions under the guise of a "supplemental" report. Defendant therefore requests that Stockdale's report dated June 24, 2006 be excluded.

WHEREFORE, PREMISES CONSIDERED, Defendant Southwest Research Institute respectfully requests that the Court exclude Dr. Stockdale's report and her testimony regarding gender bias at the Institute.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: _____

Cyndi M. Benedict
State Bar No. 03322000
Stephen J. Romero
State Bar No. 24046756
300 Convent Street, Suite 2200
San Antonio, Texas  78205-3792
Telephone:  210/224-5575
Telecopier:  210/270-7205

Attorneys for Defendant,
Southwest Research Institute

31150829.2



## CERTIFICATE OF CONFERENCE

Pursuant to Western District of Texas, Local Rule CV-7(h), counsel for Defendant

attempted to confer with opposing counsel on July 26, 2006. Counsel for Plaintiff could not be

reached prior to filing of this Motion for Leave.

_____
                Cyndi M. Benedict

## CERTIFICATE OF SERVICE

Defendant's Motion to Exclude the Testimony of Margaret S. Stockdale, Ph.D. has been
served in compliance with the Federal Rules of Civil Procedure on July 24, 2006, on the
following counsel or record:


Hal K. Gillespie
M. Jeanette Fedele
Gillespie, Rozen, Watsky, Motley & Jones, P.C.
3402 Oak Grove, Suite 200
Dallas, Texas 75204

Malinda A. Gaul
Gaul and Dumont
111 Soledad, Suite 725
San Antonio, Texas 78205

_____
                Cyndi M. Benedict

31150829.2



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAUREN BROWNING,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CAUSE NO. SA-05-CA-0245-FB |
| SOUTHWEST RESEARCH INSTITUTE<br>    Defendant. | §<br>§<br>§ | |

**ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE
THE TESTIMONY OF MARGARET S. STOCKDALE, PH.D.**

On this date came on to be considered Defendant Southwest Research Institute's Motion

to Exclude the Testimony of Margaret S. Stockdale, Ph.D. After considering the Motion and the

pleadings in this case, the Court is of the opinion that the Motion should be GRANTED.

SIGNED and ENTERED this _____ day of _____, 2006.


_____
UNITED STATES DISTRICT JUDGE

31165124.1