FILED

SEP 1 8 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LAUREN BROWNING,          §
    Plaintiff,          §
                    §
v.          §          CAUSE NO. SA-05-CA-0245-FB
                    §
SOUTHWEST RESEARCH INSTITUTE          §
    Defendant.          §

## DEFENDANT SOUTHWEST RESEARCH INSTITUTE'S MOTION TO STRIKE PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE AS INADMISSIBLE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant, Southwest Research Institute (hereinafter "SwRI," "Institute," or "Defendant"), and files this its Motion to Strike Plaintiff Lauren Browning's Summary Judgment Evidence As Inadmissible, and would respectfully show the Court as follows:

## I.
## INTRODUCTION.

Defendant filed its Motion for Summary Judgment on July 25, 2006. Plaintiff Lauren Browning (hereinafter "Plaintiff" or "Browning") filed her Response In Opposition To Defendant's Motion for Summary Judgment And Brief In Support Thereof on August 25, 2006 (hereinafter "Plaintiff's Response"). Attached to Plaintiff's Response are numerous exhibits that are replete with inadmissible hearsay, conclusory assertions, subjective beliefs and legal conclusions. In particular, Plaintiff's Affidavit dated August 24th, 2006,[1] including Plaintiff's Exhibits attached thereto,[2] is replete with inadmissible subjective conclusory assertions, speculations and hearsay. Flawed in these several respects, Plaintiff's summary judgment

---

[1] *See* Plaintiff's Exhibit 48 attached to Plaintiff's Response (hereinafter "Plaintiff's Affidavit").

[2] Attached to Plaintiff's Affidavit are Exhibits 49-61. Most of the Exhibits consist of handwritten and typed notes and memoranda allegedly drafted by Plaintiff "[d]uring the events discussed in my lawsuit." *See* Plaintiff's Exhibits 50-52, 55-59 to Plaintiff's Response.

evidence as set forth in Plaintiff's Exhibits is incompetent and should be excluded and not be considered further by this Court for purposes of summary judgment or otherwise as requested herein:

## II.
## MOTION TO STRIKE THE FOLLOWING PORTIONS OF PLAINTIFF'S AFFIDAVIT.

Defendant moves to strike the following portions of Plaintiff's Affidavit because Plaintiff is improperly using conclusory assertions, speculations and subjective beliefs as summary judgment evidence contrary to established law:[3]

a.      On the second page of her Affidavit, paragraph five (5), Plaintiff states: "Robert Pabalan made highly critical and unwarranted comments about my work in from [sic] of other staff members (Drs. Gustavo Cragnolino and David Pickett) after a business conference.  When it was suggested that Pabalan help me instead of criticizing me, Pabalan snatched my wine glass away from my plate and stated, 'I'll help Dr. Browning—no more wine for you, Dr. Browning.' At the time Pabalan said this I was drinking from the one glass of wine I had with dinner that evening.  I reported this humiliating incident to my Element Manager, English Pearcy.  However, Pearcy took no steps to help me and did not forward my complaint to Human Resources." Defendant moves to strike these sentences on the grounds that they contain impermissible speculation and hearsay and unsupported factual conclusions.

b.      On the second page of her Affidavit, paragraph six (6), Plaintiff states: "Pabalan's verbal attacks on me continued and intensified throughout my career with SwRI.  I

---

[3] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990) ("The object of [FED. R. CIV. P. 56] is not to replace conclusory allegations of the complaint or answer with *conclusory allegations of an affidavit*.") (emphasis added); *Lowery v. Univ. of Houston-Clear Lake*, 82 F. Supp. 2d 689, 696 (S.D. Tex. 2000) (holding that speculation and belief are insufficient to create fact issue as to whether nondiscriminatory reasons cited by employer are pretextual so as to avoid summary judgment); *Marshall v. East Carroll Parish Hosp. Service Dist.*, 134 F.3d 319, 324 (5th Cir. 1998) (recognizing that evidentiary facts are required to support or oppose a summary judgment motion—conclusory statements are not sufficient);  *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38 (5th Cir. 1996) (recognizing that evidence must be more than merely subjective and speculative).

continued to apprise Pearcy of the escalating attacks and I also attempted to resolve the situation on my own.  However, despite my attempts to utilize SwRI's 'Open Door Policy,' Pearcy did nothing to address or attempt to alleviate the situation."  Defendant moves to strike these sentences on the ground that they contain impermissible hearsay, legal conclusions and unsupported factual conclusions.

        c.      On the second page of her Affidavit, paragraph seven (7), Plaintiff states:  "On April 12, 2002, Pearcy reprimanded me for making a trip on my own time and at my own expense to attend a meeting at which I hoped to promote SwRI's efforts to obtain contracts for work with other clients other than the Center's primary client, the NRC.  Pearcy also accused me of making fraudulent entries on my timecard. [ . . .] Pearcy and/or Wes Patrick changed my timecard to incorrectly reflect a bill to a cost center for which I did not work on April 12, 2002.  The effect of my supervisors altering my timecard was to make my personal self-funded trip appear to be an official SwRI business trip.  Pearcy and Patrick then used this to allege that I had violated Defendant's travel policies."  Defendant moves to strike these sentences on the ground that they contain impermissible speculation and hearsay, legal conclusions and unsupported factual conclusions.

        d.      On the second page of her Affidavit, paragraph nine (9), Plaintiff states:  "Patrick was clearly livid that I dared suggest SwRI was doing anything wrong.  He also threatened my job saying that he could fire me right then and there, for cause and reminding me that Texas was a right to work state."  Defendant moves to strike these sentences on the ground that they contain impermissible speculation and hearsay.

        e.      On the second page of her Affidavit, paragraph eleven (11), Plaintiff states: "Pearcy cited vague complaints about my work but was unable to articulate a single specific

complaint or its source.  Pearcy simply accused me of 'talking to [sic] much' at meetings and said that I took to [sic] much credit for work on the ISI."  Defendant moves to strike these sentences on the ground that they contain impermissible speculation and hearsay.

  f.  On the third page of her Affidavit, paragraph twelve (12), Plaintiff states: "Since my constructive discharge, it is my understanding that, at least prior to this year and this lawsuit, everyone but myself who has held this role has been of a Principal Scientist or higher rank."  Defendant moves to strike this sentence on the grounds that it contains impermissible legal conclusions.  Further, Plaintiff fails to show how she has personal knowledge of the facts recounted herein.

  g.  On the third page of her Affidavit, paragraph fifteen (15), Plaintiff states: "During the events discussed in my lawsuit, I frequently kept notes reflecting what I was experiencing at SwRI, and things I believed to be important events."  Plaintiff's Affidavit then incorporates said notes (both handwritten and typed as Exhibits 50-52, 55-59).  Defendant moves to strike this sentence because Plaintiff is impermissibly attempting to create the impression that such notes and memoranda fall within an exception to the hearsay rule and yet Plaintiff offers no evidence supporting such legal conclusion.  *See* Section III *infra*.

### III.
### MOTION TO STRIKE THE FOLLOWING NOTES/MEMORANDA ATTACHED TO PLAINTIFF'S AFFIDAVIT.

  Plaintiff's Affidavit, paragraph 15, incorporates Plaintiff's notes and memoranda allegedly taken "[d]uring the events discussed in my lawsuit."  Such notes and memoranda constitute inadmissible hearsay.  "A memo is normally hearsay . . . . There is no more facile a method of creating favorable evidence than writing a self-exculpatory note.  Such notes have no warrants of reliability and allowing them to be placed in evidence would operate merely as a subsidy to the forest-products industry." *Lust v. Sealy, Inc.*, 383 F.3d 580, 588 (7th Cir. 2004).

Moreover, and as applicable *to each of the discussions a. – h.. which follow*, Plaintiff's statement in her Affidavit (discussed above) that "I frequently kept notes" *does not* cure the fatal defects in Plaintiff's self-exculpatory notes which clearly do not meet the rules for present sense impression.   Accordingly, Defendant moves to strike Plaintiff's Exhibits 50-52, 55-59 as explained herein:

     a.     Exhibit 50 is captioned by Plaintiff as follows: "My notes from February 9, 2002, meeting with English Pearcy re: performance review and ethics concerns."  Plaintiff's caption creates the false impression that these notes were taken contemporaneously (or immediately thereafter) with the February 9, 2002, meeting, but, in fact, the notes are dated *a year later*— February 9, 2003.  Obviously within the one-year period between the meeting itself and the handwritten narration thereof, Plaintiff has had time to reflect, filter, embellish and/or forget the events and conversations described therein.  Thus, such notes do not qualify for the present sense impression exception under FED. R. EVID. 803(1).  Rule 803(1) provides that an out-of-court statement is not excludable as hearsay if the statement "describ[es] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Courts have agreed on three principal criteria for the admission of statements pursuant to this rule:  (1) the statement must describe an event or condition "*without calculated narration*"; (2) the speaker must have *personally perceived* the event or condition described; and (3) the statement must have been made *while* the speaker was perceiving the event or condition, or *immediately thereafter*.  *See United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001).  "A statement that meets these requirements is generally regarded as trustworthy, because the substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication."  *Id.* at 646-647 (internal quotations omitted).  Plaintiff's

statements do not meet these criteria.  Accordingly, Exhibit 50 clearly falls within the definition

of hearsay under FED. R. EVID. 801(c), should be deemed inadmissible and stricken.[4]

      b.    Exhibit 51 is captioned by Plaintiff as follows: "My notes and an email regarding

April 12, 2002 fraudulent timecard allegation."  Yet Exhibit 51 appears to be dated April 27,

2002 (*see* top right hand corner of exhibit), and describes several events occurring over a two-

week period of time related to Plaintiff's disputed conference travel authorization.[5]  Again the

***narration itself negates any indication*** that the statements were written contemporaneously (or

immediately thereafter) with the events described therein.   For example, Plaintiff writes

(apparently on April 27, 2002): "On Monday April 15, at 8 AM, I received email from Pearcy

saying he would add my email to 'the file.'  I also met with him that day—he said 'workday ends

at 5.'"  Plaintiff continues her narrative: "Late that week, Thursday, I went to check personnel

file for Division 20."  As explained in *Alexander v. CIT Technology Financing Services*, 217

F. Supp. 2d 867 (N.D. Ill. 2002), "[t]here is no per se rule indicating what time interval is too

long under Rule 803(1)."   Nevertheless, the court excluded plaintiff's notes[6] as inadmissible

hearsay because plaintiff "provided no evidence supporting her claim that these notes were

written 'immediately thereafter' such that they would constitute present sense impressions." 217

F. Supp. 2d at 883 (citing *United States v. Carter*, 910 F.2d 1524, 1530-31 (7th Cir. 1990)

---

[4] Still further, Exhibit 50 appears to describe not only the February 2002 meeting with English Pearcy, but also ***other events in the past as well***.  The text itself clearly demonstrates that such handwritten notes were not taken while Plaintiff was perceiving the events, or immediately thereafter.  For example, Exhibit 50 contains the following sentences:  "In one such meeting, G Wittmeyer told a group of CNWRA staff that we should not mention these teleconferences . . . .";  "Within a few weeks afterwards, at the most, I went in to talk with ECP about this.  I said that some people were concerned that . . . ."  Obviously Plaintiff's narration of these events is outside the parameters of the present sense impression exception to the hearsay rule.  She is clearly describing events and conversations that occurred in the past.

[5] Without claiming any expertise in handwriting analysis, Defendant remarks that Exhibit 51 appears to have different handwriting from that of the other handwritten Exhibits referenced herein.

[6] Plaintiff (female former employee) claimed she wrote notes regarding alleged confrontation with supervisor and meetings with supervisors to discuss performance review immediately following the incidents.  217 F. Supp. 2d at 882.

(finding it proper to exclude a statement made only one hour after the event to which the statement pertained)).  Accordingly, Plaintiff Browning's Exhibit 51 clearly does not fall within the present sense impression exception under FED. R. EVID. 803(1) and must be excluded as inadmissible evidence from this Court.

c.    Exhibit 52 is captioned by Plaintiff as follows:  "My notes re: February 12, 2003 visit by Wes Patrick."  Although Exhibit 52 appears to be dated February 12, 2003, once again Plaintiff has offered no evidence that these notes were written "immediately thereafter" such that they could constitute present sense impressions.  As admonished by the court in *Alexander v. CIT Technology Financing Services*, 217 F. Supp. 2d 867, 883 (N.D. Ill. 2002), "[e]ven if Alexander [plaintiff] wrote these notes on the same days as the incidents, this does not mean that they qualify as 'immediately thereafter' under Rule 803(1)."  Exhibit 52 contains no circumstantial guarantees of trustworthiness as required for the present sense impression exception.[7]  Plaintiff had ample time to edit and revise her account even if written that day.  Accordingly, Exhibit 52 clearly does not fall within the present sense impression exception under FED. R. EVID. 803(1) and must be excluded.

d.    Exhibit 55 is captioned by Plaintiff as follows:  "My notes from June 24, 2003 meeting with Pat Mackin re:  travel policy allegations."  Exhibit 55 is dated June 24, 2003, but again Plaintiff offers no evidence that these notes were written contemporaneously or "immediately after" the conversation with Pat Mackin (or with English Pearcy or with Plaintiff's secretary) as quoted therein.  On the contrary, it is obvious from reading the notes that Plaintiff has written her documentation after a substantial lapse of time.  For example, on the first page of

---

[7] Exhibit 52 also contains such conclusory subjective statements as "*I feel* that he then threatened me with termination, and then offered me a carrot."  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (holding that conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy nonmovant's burden on motion for summary judgment).

the notes, Plaintiff writes: "LB [Plaintiff] stopped by PM's [Pat Mackin} office – 9:30 am

6/24/03." After the alleged conversation, Plaintiff recounts in her notes how she returned to her

office and continued the day's work: "I called Peter, told him what happened, & then I got back

to work . . . ." The notes then recite in elaborate detail the points Plaintiff allegedly "tried to

raise with PM, but was unsuccessful" in doing so (Exhibit 55, page 2). In attempting to justify

(via after the fact  bootstrapping) her travel expenses, Plaintiff also recounts (impermissibly)

conversations she allegedly had with English Pearcy (no precise date given for these

conversations other than "twice in 5 years" (Exhibit 55, page 3)) Similarly, Plaintiff also

wrongfully discusses another conversation she had previously with Pat Mackin regarding travel

expenses (Exhibit 55, page 4), but again no precise date is given by Plaintiff for the conversation

other than it occurred shortly after Pat Mackin was assigned director in charge of expenses

(Exhibit 55, page 4). As still additional basis for striking the exhibit, Plaintiff recites an account

of a conversation with her secretary (Exhibit 55, page 4) – again no precise date for the

conversation is provided by Plaintiff although it certainly occurred before June 24, 2003, the date

of the notes). In summary, Plaintiff has provided no evidence supporting any claim that these

notes were written contemporaneously or "immediately after" the conversations and events

recounted therein.  Accordingly, Exhibit 55 clearly does not fall within the present sense

impression exception under FED. R. EVID. 803(1) and must be excluded for all purposes from this

Court's consideration.[8]

   e.  Exhibit 56 is captioned by Plaintiff as follows: "My notes from January 30, 2004

phone call from English Pearcy removing me from the Q&C ISI lead." Again Plaintiff has

provided no evidence supporting any claim that these notes were written contemporaneously (or

---

[8]. FED. R. EVID. 803(1) provides that the statement must have been made while the speaker was perceiving the event
or condition, or immediately thereafter. *See United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001).

immediately thereafter) with the telephone conversation between English Pearcy and Plaintiff other than Plaintiff's conclusory handwritten assertion thereon:  "This text above (pg 1-3) was written during a phone c with English Pearcy & L. Bro on Jan. 30, 2004."  Accordingly, Exhibit 56 clearly does not fall within the present sense impression exception under FED. R. EVID. 803(1) and must be excluded.

        f.      Exhibit 57 is captioned by Plaintiff as follows:  "My notes from February 4, 2004 discussions with English Pearcy re: performance evaluation and unequal treatment."[9]  Since Plaintiff offers no evidence supporting any claim that these notes were written contemporaneously (or immediately thereafter) with the performance evaluation discussion recounted therein, such notes constitute inadmissible hearsay.  Moreover, as with Exhibit 55, Plaintiff impermissibly recounts other conversations in Exhibit 57 ***that clearly took place much earlier than the date the notes were allegedly taken***—February 4, 2004.  For example, Plaintiff describes an alleged earlier conversation with David Pickett on January 23, 2004 (Exhibit 57, page 2).  Plaintiff also describes what appears to be the same telephone conversation with English Pearcy regarding her removal as the Q&C ISI lead as previously recounted in Exhibit 56 (*see* Exhibit 57, page 7).  Yet in Exhibit 56, the conversation allegedly occurred on January 30, 2004, and in Exhibit 57, the conversation allegedly occurred on January 22, 2004.  Again Plaintiff utterly fails to satisfy the requirements of the present sense impression exception under FED. R. EVID. 803(1), and Exhibit 57 must be excluded.[10]

---

[9] The date of Exhibit 57 is somewhat confusing because it appears Plaintiff originally had written the year as "2003" and then revised the year as "2004" (*see* upper right hand corner of Exhibit 57, page 1).

[10] Defendant remarks that often Plaintiff's notes are written in the third person instead of first person point of view. *See, e.g.*, Exhibit 55 and 57.  While Plaintiff might contend that writing in third person makes the notes more trustworthy, in fact, writing in third person only further indicates Plaintiff has had the opportunity for conscious reflection (in other words the time for editing, forgetting, embellishing).

g.     Exhibit 58 is captioned by Plaintiff as follows: "February 10, 2004 note re: English Pearcy's 'file' on Bill Murphy." Exhibit 58 is dated February 10, 2004, but the events and conversations discussed therein obviously occurred much earlier. For example, Plaintiff recounts her conversation with English Pearcy occurring on January 30, 2004 (Exhibit 58, Column A). Plaintiff then continues to describe another conversation she had with English Pearcy related to another employee (no date is specifically mentioned other than said conversation occurred sometime during the previous "*5.5 years*"). Again Plaintiff offers no evidence that these notes were written contemporaneously or "immediately after" the conversations and events described therein. On the contrary, it is obvious from reading the notes that Plaintiff has written her documentation regarding these conversations and events after a substantial lapse of time. Accordingly, Exhibit 58 clearly does not fall within the present sense impression exception under FED. R. EVID. 803(1) and must be excluded.

h.     Exhibit 59 is captioned by Plaintiff as follows: "My typed notes from April 2004 meeting with English Pearcy." Exhibit 59 itself lacks a specific date / time notation, but Plaintiff does suggest therein that she is writing her account at 7:30 pm, the same day as Plaintiff's earlier meeting with English Pearcy at Starbucks. Plaintiff offers no explanation of whether Plaintiff's notes were first handwritten and then later typed or typed from the outset. Assuming the veracity of Plaintiff's timeframe (*i.e.*, the notes were taken the same day as the earlier meeting), courts recognize that even if the declarant's notes were written on the same day as the incident, this does not mean that they qualify as "immediately thereafter" under the present sense impression exception to the hearsay rule. *See Alexander v. CIT Technology Financing Services*, 217 F. Supp. 2d 867, 883 (N.D. Ill. 2002); *see also United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (finding a handwritten note inadmissible because it may have been intended as a

reflective summary and characterization of conduct rather than a spontaneous reaction to an immediate sensation).  Plaintiff's opportunity for conscious reflection and subjective editing is evident by her own words in her final summary account of the conversation:  ***"What's my take on all of this?***  It was a thinly veiled threat by ECP to remind me that my performances are 'negatively trending,' and it was sugar coated in advice that could not do me much good [. . .]  I believe that, like me, ECP documented his version of our conversation, but I do not believe that ECP wants the best for me."  This conclusory, speculative, self-serving, after-the-fact crafting of events by Plaintiff is particularly poignant as Plaintiff, and only Plaintiff, knew she intended to quit her job just weeks later, file this lawsuit, and claim constructive discharge.  Plaintiff's notes are wholly unreliable, are incompetent summary judgment rebuttal evidence, obviously constitute inadmissible hearsay and, thus, must be excluded from any consideration for any purpose.

## IV.
## MOTION TO STRIKE EXHIBIT 4 TO PLAINTIFF'S RESPONSE

In Plaintiff's Response, Plaintiff cites Exhibit 4 to show that she "was the only female holding the position of Research Scientist or above" (page 4 of Plaintiff's Response) and that Plaintiff's performance evaluation reports revealed that "Browning was performing all the representative functions of the Senior Research Scientist level" (page 42 of Plaintiff's Response).  Like the Exhibits attached to Plaintiff's Affidavit discussed *supra*, Exhibit 4 is a self-serving document created by Plaintiff highlighting Plaintiff's alleged achievements throughout her career.  The document appears to have been prepared after Plaintiff quit and filed a charge with the EEOC.  (Bates label is Plaintiff's; it is ***not*** a document produced by the EEOC to Defendant.)  Moreover, nowhere in Exhibit 4 does Plaintiff address the issue for which it is allegedly submitted (*i.e.*, that she was the only female holding position of Research Scientist or that she

was performing at the level of a Senior Research Scientist).  Accordingly, Exhibit 4, Plaintiff's self-serving dissertation, not even arguably a present sense impression should be excluded as incompetent evidence.

## V.
## MOTION TO STRIKE EXHIBIT 60 ATTACHED TO PLAINTIFF'S AFFIDAVIT.

Defendant moves to strike Exhibit 60 attached to Plaintiff's Affidavit (captioned by Plaintiff:  Ex. 60  Chart of NRC Technical Agreements listed by ENFE subissue) because Plaintiff offers no evidence regarding the authenticity of this document, how this record was made, compiled and preserved, the date of the document's creation and by whom.  In fact, when Wesley Patrick (Vice President of Division 20) was asked during his deposition on April 27, 2006, whether he had seen the document (Exhibit 60), he responded that he had not.[11] Exhibit 60 should not be considered admissible for any purpose.

WHEREFORE, PREMISES CONSIDERED, Defendant Southwest Research Institute respectfully requests that the Court grant its Motion to Strike Plaintiff's Summary Judgment Evidence as requested herein and that the Court grant Defendant such other and further relief, both at law and in equity, both general and specific to which Defendant may show itself justly entitled.

---

[11] **Exhibit A** (Depo. Wesley Patrick at page 5 (lines 22-24), page 6 (lines 2-5).

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: _____

        Cyndi M. Benedict
        State Bar No. 03322000
        Stephen J. Romero
        State Bar No. 24046756
300 Convent Street, Suite 2200
San Antonio, Texas  78205-3792
Telephone:  210/224-5575
Telecopier:  210/270-7205

Attorneys for Defendant,
Southwest Research Institute

## CERTIFICATE OF CONFERENCE

      Defendant was unable to confer with Plaintiff's counsel in advance of filing this Motion to Strike.  Because, however, this Motion relates to Defendant's underlying dispositive motion it is unclear whether conference is required.  Defendant is willing, in light of the nature of the Motion, to represent that Plaintiff opposes Defendant's Motion to Strike.

_____
        Cyndi M. Benedict

## CERTIFICATE OF SERVICE

I hereby certify that, in compliance with the Federal Rules of Civil Procedure, Defendant, Southwest Research Institute's Motion to Strike Plaintiff Lauren Browning's Summary Judgment Evidence As Inadmissible has been served on September 18, 2006, on the following counsel of record:

Hal K. Gillespie
M. Jeanette Fedele
Gillespie, Rozen, Watsky, Motley & Jones, P.C.
3402 Oak Grove, Suite 200
Dallas, Texas  75204

Malinda A. Gaul
Gaul and Dumont
111 Soledad, Suite 725
San Antonio, Texas  78205

_____
Cyndi M. Benedict

# EXHIBIT A

1          IN THE UNITED STATES DISTRICT COURT
2            FOR THE WESTERN DISTRICT OF TEXAS
                    SAN ANTONIO DIVISION

3

LAUREN BROWNING,              )      **CERTIFIED COPY**
4                             )
            Plaintiff(s)      )
5                             )
VS.                           )  NO. SA-05-CV-0245-FB
6                             )
SOUTHWEST RESEARCH            )
7   INSTITUTE,                )
                              )
8           Defendant(s)      )

9   ********************************************************

10          ORAL AND VIDEOTAPED DEPOSITION OF

11                    WESLEY PATRICK

12                    APRIL 27, 2006

13  ********************************************************

14          ORAL AND VIDEOTAPED DEPOSITION of WESLEY
    PATRICK, produced as a Witness at the instance of the
15  Plaintiff, and duly sworn, was taken in the above-styled
    and numbered cause on the 27th day of April, 2006, from
16  10:18 a.m. to 4:11 p.m., before LEESA L. PARKER, CSR in
    and for the State of Texas, reported by machine
17  shorthand, at the Law Offices of FULBRIGHT & JAWORSKI,
    L.L.P., NationsBank Plaza, Suite 2200, 300 Convent
18  Street, San Antonio, Texas  78205-3792, pursuant to the
    Federal Rules of Civil Procedure and the provisions
19  stated on the record or attached hereto.

20

21

22

23  ATKINSON-BAKER, INC.
    COURT REPORTERS
24  (800) 288-3376
    www.depo.com
25  FILE NO.:  A002F0B

1

```
 1                        EXAMINATION

 2   BY MS. FEDELE:

 3       Q.   Good morning, Dr. Patrick.  How are you this

 4   morning?

 5       A.   Good.                                        10:18

 6            Yourself?

 7       Q.   Good.  Thank you.

 8            And would you state your full name for the

 9   record.

10       A.   Wesley Clare Patrick.                        10:18

11       Q.   And you've sat in on the depositions -- all the

12   other depositions taken to date in this case; is that

13   correct?

14       A.   Yes, ma'am.

15       Q.   Okay.  So, you kind of know the drill?        10:18

16       A.   Uh-huh.

17       Q.   Okay.  I want to start by showing you an

18   exhibit.  Dr. Patrick, I've handed you what's been

19   marked as Exhibit 29.  Have you ever seen this document

20   before?                                               10:19

21       A.   No, I don't believe I have.

22       Q.   Have you seen a document in the same form as

23   Exhibit 29?

24       A.   Not that I recall.

25       Q.   Do you typically see the documents prepared by   10:20
```

1    the NRC for the Center?                                      10:20

2        A.    Documents that are prepared for purposes of

3    giving us guidance or summarizing our results, those

4    would be things that I would typically see.  But I've

5    not seen this one.                                           10:20

6        Q.    Okay.  And although I sense that you are

7    familiar with the ways that depositions go, I need to

8    get certain things on the record.

9        A.    Okay.

10       Q.    So, let's go ahead and go through the              10:20

11   introductory items such as your home address.  Could you

12   give that for the court reporter, please.

13       A.    My home address is 10350 Remuda View -- that's

14   R-E-M-U-D-A -- here in San Antonio, Texas 78254.

15       Q.    And your home phone, please.                       10:21

16       A.    Area code (210)522-9549 is my home phone.

17       Q.    And Dr. Patrick, would you give your date of

18   birth, please.

19       A.    My date of birth is December 29th, 1951.

20       Q.    And are you currently -- or please state your      10:21

21   current title with Southwest Research Institute.

22       A.    At Southwest Research Institute I'm vice

23   president of the division of geosciences and

24   engineering.  We typically will say it the other way so

25   it's pronounceable -- the geosciences and engineering       10:21

6

1             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
2                SAN ANTONIO DIVISION

3

LAUREN BROWNING,          )
4                     )
        Plaintiff(s)    )
5                     )
VS.                 ) NO. SA-05-CV-0245-FB
6                     )
SOUTHWEST RESEARCH     )
7 INSTITUTE,             )
                    )
8         Defendant(s)    )

9

10                CERTIFICATE FROM THE

11    ORAL AND VIDEOTAPED DEPOSITION OF WESLEY PATRICK

12               April 27, 2006

13      I, LEESA L. PARKER, a Certified Shorthand

14 Reporter in and for the State of Texas, do hereby

15 certify that the foregoing deposition is a full, true

16 and correct transcript;

17      That the foregoing deposition of WESLEY

18 PATRICK, the Witness, hereinbefore named was at the time

19 named, taken by me in stenograph on April 27, 2006, the

20 said Witness having been by me first duly cautioned and

21 sworn to tell the truth, the whole truth, and nothing

22 but the truth, and the same were thereafter reduced to

23 typewriting by me or under my direction.  The charge for

24 the completed deposition is $_____ due from

25 Plaintiff;

1    ( ) That the Witness shall have thirty (30)

2    days for review and signature of the original transcript

3    and if any corrections returned are attached hereto.

4    ( ) That the signed transcript ( ) was ( ) was

5    not received from the Witness within 30 days.

6    That the amount of time used by each party at

7    the deposition is as follows:

8    Ms. Fedele - 3:44
     Ms. Benedict - 0:10
9    Ms. Anderson - 0:00

10    I further certify that I am neither counsel

11   for, related to, nor employed by any of the parties in

12   the action in which this proceeding was taken, and

13   further that I am not financially or otherwise

14   interested in the outcome of the action.

15    Certified to by me this ___5th___ day of

16   ___May___, 2006.

17

18   _____
     LEESA L. PARKER, Texas CSR 5343
19   Expiration Date:  12/31/07
     Atkinson-Baker Court Reporters
20   (800) 862-0562

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LAUREN BROWNING,          §
    Plaintiff,                §
                §
v.                        §          CAUSE NO. SA-05-CA-0245-FB
                §
SOUTHWEST RESEARCH INSTITUTE          §
    Defendant.                §

**ORDER GRANTING DEFENDANT SOUTHWEST RESEARCH INSTITUTE'S
MOTION TO STRIKE PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE
AS INADMISSIBLE**

On this date came on to be considered Defendant Southwest Research Institute's Motion to Strike Plaintiff's Summary Judgment Evidence As Inadmissible. After considering the Motion and the pleadings in this case, the Court is of the opinion that the following Exhibits attached to Plaintiff's Response In Opposition to Defendant's Motion for Summary Judgment And Brief In Support Thereof should be excluded and stricken from evidence: (a) Exhibits 4; 48, 50-52, 55-59; and 60. Accordingly, Defendant's Motion to Strike is hereby GRANTED.

SIGNED and ENTERED this _____ day of _____, 2006.

_____
UNITED STATES DISTRICT JUDGE

31192005.1