**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LAUREN BROWNING,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. SA-05-CA-0245-FB** |
| | * | |
| **SOUTHWEST RESEARCH INSTITUTE,** | * | |
| | * | |
| **Defendant.** | * | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is defendant's motion for summary judgment. (Docket nos. 72,96). Plaintiff has responded. (Docket no. 77). Upon consideration of the briefs, the arguments given, the presented evidence, and the applicable law, the Court concludes defendant's motion should be **GRANTED**.

## Factual Background

Lauren Browning instituted this lawsuit against her former employer Southwest Research Institute ("SwRI") alleging causes of action for gender and retaliation discrimination under Title VII of the Civil Rights Act of 1964, violation of the Equal Pay Act, 29 U.S.C. Sections 206(d) and 215(a)(3) and retaliation for her complaints of disparate pay.

In her original complaint, Dr. Browning alleges she was employed as a one-year contract employee by SwRI, Division 20, beginning on December 7, 1998. After serving her initial year, Dr. Browning was retained as a permanent Research Scientist for

Division 20 beginning October 14, 2000.  She resigned from her position on May 21, 2004, and later filed this lawsuit.  In her complaint, Dr. Browning alleges that during her tenure at SwRI, she was paid considerably less than male employees with comparable education and experience.  She contends SwRI continually refused to promote her even though her qualifications were similar or superior to male colleagues promoted above her level after working as Research Scientists for a shorter time.  She states SwRI retaliated against her for her complaints of the disparities in pay and advancement opportunities by stripping her of primary job responsibilities when she complained.  SwRI now moves for summary judgment on all of Dr. Browning's asserted causes of action.

### Standard of Review

Federal Rule of Civil Procedure 56(b) provides that a defending party may move, with or without supporting evidence, for a summary judgment in the party's favor.  Summary judgment shall be rendered if the pleadings and evidence show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  **FED. R. CIV. P. 56©)**.  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).  The party opposing a motion must present affirmative

evidence to defeat a properly supported motion for summary judgment. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 257 (1986). A defendant who moves for summary judgment on the plaintiff's claim may satisfy its burden in two ways: (1) submit evidence that negates the existence of a material element of the plaintiff's claim; or (2) show there is not evidence to support an essential element of the plaintiff's claim. **Celotex Corp.**, 477 U.S. at 325. An adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing there is a genuine issue for trial; if he does not so respond, summary judgment, if appropriate, shall be entered against him. **FED. R. CIV. P. 56(e).**

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. **Anderson**, 477 U.S. at 247-248. The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Id.** All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).

3

**DISCUSSION**

**I.   TITLE VII DISCRIMINATION**

There are two methods for proving employment discrimination claims.  First, a claim may be established by presenting direct evidence of discrimination.  Second, if the plaintiff must rely on circumstantial evidence, the indirect method of proof set forth in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802 (1973) is appropriate.  ***See Sandstad v. CB Richard Ellis, Inc.,*** 309 F.3d 893, 989 (5th Cir. 2002).  In this case, Dr. Browning relies upon circumstantial evidence to establish her claims.

The indirect method of proof in an employment discrimination case requires that a plaintiff carry the initial burden of proving, by the preponderance of the evidence, a prima facie case of discrimination.  ***Patterson v. McLean Credit Union***, 491 U.S. 164, 186 (1989); ***Texas Dep't of Cmty. Affairs v. Burdine***, 450 U.S. 248, 252-253 (1981).  If the plaintiff satisfies this burden, a rebuttable presumption arises that the employer unlawfully discrim-inated.  ***Patterson***, 491 U.S. at 187; ***Burdine***, 450 U.S. at 254.  The burden of production then shifts to the defendant to present evidence the challenged action occurred for a legitimate, nondis-criminatory reason.  ***Burdine***, 450 U.S. at 254-55.  If this burden is met, the presumption disappears and the plaintiff must then - prove either: (1) the reason articulated by the employer was a mere pretext for discrimination (pretext alternative), or (2) the

4

defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). *Patterson*, 491 U.S. at 187; *Burdine*, 450 U.S. at 256.  Therefore, under this integrated approach, a plaintiff relying on circumstantial evidence has two options for surviving summary judgment: (1) the plaintiff may offer evidence showing the defendant's proffered nondiscriminatory reasons are false; or (2) the plaintiff may offer evidence showing discriminatory animus was a motivating factor for the defendant's adverse employment decision. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

For purposes of proving the pretext alternative, it is not enough to show the stated reason was false; plaintiff must show both the stated reason was false, and discrimination was the actual reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-17 (1993).  It is, however, permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).  Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude the employer unlawfully discriminated.  *Id*. at 148.  Therefore, the plaintiff need not

produce independent evidence of discrimination, instead, "rejection of the defendant's proffered reasons will permit a trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511.

Under the mixed-motive alternative, in which the plaintiff alleges the employment decision was based on a "mixture of legitimate and illegitimate motives," the plaintiff need only prove an illegitimate motive was a motivating factor in the decision. *Rachid*, 376 F.3d at 312.  Should the plaintiff meet this burden, the employer may avoid liability by proving it would have made the same employment decision regardless of discriminatory animus.  *Id*. Thus, the employer's burden at this stage is effectively that of proving an affirmative defense.  *Machinchick*, 398 F.3d at 352.  If the employer fails to carry this burden, plaintiff prevails.  *Id*. The plaintiff retains the burden of persuading the fact-finder of intentional discrimination throughout the analysis.  *Burdine*, 450 U.S. at 253.

Therefore, at the first stage of the *McDonnell-Douglas* analysis, Dr. Browning must show she meets the prima facie elements of gender discrimination, which include:  (1) she belongs to a protected group, i.e., female, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) a similarly situated person, not a member of her protected group was treated favorably.  *Okoye v. Univ. of Tex. Houston Health Science*

6

*Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001). In this motion for summary judgment, SwRI disputes only Dr. Browning's ability to establish the third prong of her prima facie burden of proof, i.e. that she suffered an adverse employment action. In relation to the third prong of a prima facie case, the Fifth Circuit has long held Title VII was designed to address only ultimate employment decisions, not every decision made by employers that arguably might have some tangential effect upon ultimate decisions. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir. 1997)(quoting *Dollis v. Rubin*, 77 F.3d 777, 781-782 (5th Cir. 1995)). Ultimate employment decisions include acts "'such as hiring, granting leave, discharging, promoting and compensating.'" *Mattern*, 104 F.3d at 707 (quoting *Dollis*, 77 F.3d at 781-782)(citation omitted)).

Dr. Browning contends her resignation amounted to an adverse employment action because it constituted a constructive discharge. At this first stage of the *McDonnell-Douglas* burden shifting analysis, to survive summary judgment based upon an assertion that she suffered a constructive discharge, a plaintiff must produce evidence her working conditions were "'so intolerable that a reasonable employee in her position would [have felt] compelled to resign.'" *Denman v. Tx. Dep't of Licensing and Regulation*, No. SA-04-CA-620-RF (Jan. 19, 2006), 2006 WL 504059 at *3 (*quoting* *Hockman v. Westwood Commc'ns, L.L.C.*, 407 F.3d 317, 331 (5th Cir. 2004)). To make this showing, a plaintiff must establish the existence of

"aggravating factors," not merely harassment. ***Denman***, at *3  In making this determination of constructive discharge, courts consider the following aggravating factors: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." ***Brown v. Kinney Shoe Corp.***, 237 F.3d 556, 566 (5th Cir. 2001).  To prevail on a constructive discharge claim, a plaintiff must ultimately show a greater degree of harassment than that required for a hostile work environment claim. ***Hockman v. Westwood Commc'ns, L.L.C.***, 407 F.3d at 331.  "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." ***Brown v. Kinney Shoe Corp.***, 237 F.3d at 566.  To survive summary judgment, a plaintiff must show the harassment was so severe and pervasive that she was essentially prevented from succeeding in the workplace. ***Hockman***, 407 F.3d at 325.

Dr. Browning contends her constructive discharge was based solely on aggravating factors three and six: a reduction in her job responsibilities and badgering and harassment calculated to encourage her resignation.  Dr. Browning contends that after she

complained to her supervisors of disparate salary, they engaged in a calculated plan to harass and humiliate her to force her resignation. Dr. Browning cites several instances which she asserts support these contentions. First, Dr. Browning states she wrote on her 2002 performance review that management's response to her complaints of pay disparity "warrants scrutiny". As a result, she attests "the Center's President, Wes Patrick," came to her office to confront her about her comment. She attests he was very upset and threatened and intimidated her by saying "he could fire me right then and there, for cause and reminding me that Texas was a right to work state." *See plaintiff's response*, **exh. 48, p.2.**

Next, Dr. Browning contends she was subjected to a higher level of scrutiny than her male co-workers in making travel arrangements and in getting approval for travel expenses that exceeded per diem protocol. Dr. Browning contends her 2003 performance evaluation reflected these unfounded criticisms of failure to use proper travel-arrangement protocol. Dr. Browning, next, asserts that in July 2003, although there were no openings, SwRI began a search for a Senior Research Scientist, a promotional position she repeatedly told her supervisors she desired. The job description listed the same work she was already performing at her lower position. However, Dr. Browning contends she was not approached by her supervisory team to apply for the position. Dr. Browning also asserts she was forced to participate in the

interview process for her replacement shortly before her resignation. Dr. Browning also asserts that in 2004, she was not considered for a position as a Principal Scientist in Planetary Sciences, even though she had sufficient experience.

Dr. Browning contends her supervisors artificially suppressed her yearly performance evaluations to prevent her from qualifying for a promotion to a higher grade by downgrading her performance based upon subjective and minor alleged offenses. Finally, Dr. Browning asserts her supervisor, English Pearcy, kept a secret file containing documentation of his perceptions of instances in which her performance was inadequate. Dr. Browning contends that after her supervisory team decided to force her resignation, Pearcy met with her often to discuss these perceived shortcomings and inadequacies in her performance. With regard to the third aggravating factor, Dr. Browning asserts her job responsibilities were reduced when her supervisor, English Pearcy, removed her from the lead position in an ongoing research project without following the usual protocol.

To support these named incidents, Dr. Browning submits as evidence her attested handwritten notes taken after each event. ***Plaintiff's response to summary judgment motion*, exhs. 48-50,52,57,59.** These notes document her perception of the particular event and any conversation and actions that took place. Dr. Browning also submits her performance evaluations for the pertinent

years and the disciplinary notes from her personnel file regarding her alleged violation of travel-arrangement protocol. **Plaintiff's response** at exhs. 7,39-41.

While this summary judgment evidence raises a genuine issue of material fact whether the named incidents actually occurred, it does not serve to set forth sufficient evidence of harassment or humiliation necessary to raise a genuine issue of material fact whether Dr. Browning was constructively discharged. Although Dr. Browning *perceived* her supervisory team engaged in a calculated plan to force her resignation, these collective facts do not support such a finding, nor do they raise a genuine issue of material fact of a calculated plan. Also, these named incidents and evidence do not raise a genuine issue of material fact whether Dr. Browning was treated differently than her male co-workers. And, in any event, discrimination, alone, without a showing of any of the aggravating factors cannot serve as basis for a claim of constructive discharge. Therefore, the named incidents based in disparate treatment must be disregarded for this purpose.

When viewed collectively, the named incidents do not establish a genuine issue of material fact whether Dr. Browning can establish her working conditions were so intolerable a reasonable employee under these circumstances would feel compelled to resign following their occurrences. Plaintiff complains of her removal as Q&C ISI lead. However, summary judgment evidence reflects that this

11

occurred because she was unable, due to distractions of other duties, to give the project focused attention. ***Plaintiff's response* at exh. 64, pp. 103-104.** While the alleged incident with Wes Patrick was believably intimidating and humiliating, even this incident in conjunction with the alleged discrimination does not raise a genuine issue of material fact whether a reasonable person would have felt compelled to resign. Although, in hindsight, Dr. Browning might be humiliated to learn her supervisor retained "a secret file" on her performance shortcomings, admittedly, it was "secret", and therefore, at the time of her resignation was not known to her. Consequently, this fact cannot serve to raise a genuine issue of material fact whether her working conditions were so intolerable that she felt compelled to resign. In addition, while Dr. Browning may present evidence she was not asked to apply for, or was not considered for, several promotion positions, she fails to show she was prevented in any way from applying. Therefore, the allegations that she was not asked or encouraged to apply for promotional positions cannot raise a genuine issue of material fact whether her working conditions were so intolerable she felt compelled to resign. The fact that Dr. Browning participated in interviewing her replacement could not serve as basis for showing constructive discharge because at the time, she did not know she would resign or that this interviewee would replace her.

To the extent Dr. Browning contends her supervisor intentionally repressed her performance evaluations to prevent her from gaining promotions, her claim also fails. The evidence shows, and Dr. Browning admitted, Dr. Browning was required to attain consecutive ratings of "clearly outstanding" on her performance evaluations to be eligible for a promotion. **Defendant's motion, exh. A, par. 10.** While Dr. Browning alleges her performance evaluations were subjectively suppressed, she presents no evidence to show they were not accurate or that she would have been otherwise eligible for a better rating without Pearcy's alleged subjective criticisms. Dr. Browning presents no evidence which would raise a genuine issue of material fact whether she should have received this rating for two consecutive years, and therefore, her constructive discharge claim based upon suppression of her performance evaluations must fail. In any event, assuming Dr. Browning is correct that she should have received the required ratings, this allegation of intentional suppression is insufficient to raise a genuine issue of material fact of the existence of harassment to support her claim of constructive discharge, even in light of the other alleged instances of harassment.

For these reasons, Dr. Browning fails to raise a genuine issue of material fact whether she can show she was constructively discharged. Based upon this finding, Dr. Browning cannot raise a genuine issue of material fact whether she suffered an adverse

employment action, an element of her prima facie case.  Because Dr. Browning is unable to raise a genuine issue of material fact whether she can satisfy her initial burden of proof under **McDonnell Douglas**, the Court need not explore the remainder of the parties' shifting burdens.  Accordingly, SwRI's motion for summary judgment on Dr. Browning's Title VII cause of action for gender discrimination should be **GRANTED.**

## II.  RETALIATION UNDER TITLE VII

SwRI moves for summary judgment on Dr. Browning's Title VII retaliation cause of action on two bases.  First, SwRI contends Dr. Browning failed to exhaust her administrative remedies on her claim that SwRI retaliated against her based upon her complaints of gender discrimination.  Thus, SwRI contends Dr. Browning is barred from raising this claim.  Next, SwRI contends Dr. Browning cannot show she engaged in protected activity, an element of her prima facie case to show retaliation, and thus, her claim must fail as a matter of law.  The Court will address each bases for summary judgment in turn.

### A.    Exhaustion of Administrative Remedies

SwRI's first argument in support of its motion for summary judgment on Dr. Browning's retaliation cause of action under Title VII is that she failed to allege the occurrence of such retaliation in the charge she filed with the EEOC, even though she alleges the retaliation occurred prior to the charge.  Because she failed to

14

make this allegation in her EEOC charge, SwRI contends Dr. Browning failed to exhaust her administrative remedies on this claim, and thus, is precluded from asserting this retaliation cause of action as a matter of law.

It is well-settled that courts may not adjudicate Title VII claims to which the aggrieved party has not exhausted administrative remedies. *National Ass'n of Govern. Emp. v. City Pub. Serv.,* 40 F.3d 698, 711 (5th Cir. 1994)(*citing Tolbert v. United States,* 916 F.2d 245, 247-48 (5th Cir. 1990)(per curiam)). Exhaustion occurs when the plaintiff: (1) files a timely charge with the EEOC and (2) proceeds through the administrative process and receives a statutory notice of right to sue. **42 U.S.C. § 2000e-5(e)(1);** *see also Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378-379 (5th Cir. 2002); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996). The purpose of this requirement is to allow the agency, in its investigatory and conciliatory role, the opportunity to fully investigate and attempt to resolve claims of discrimination.   The charge of discrimination also serves as notice to the employer of the employee's allegations. *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1319 (11th Cir.2001).

Because filing an EEOC charge is a mandatory prerequisite of a Title VII lawsuit, the trial court's scope of inquiry is limited to "those grounds of a Title VII complaint that were raised in the administrative process." *Anderson v. Lewis Rail Serv. Co.,* 868 F.2d

774, 775 (5th Cir. 1989).  Consequently, court action cannot encompass facts or issues that do not relate to the subject matter of the EEOC charge.  *Id.*  Because the fundamental purpose of the charge is to trigger an investigation by the EEOC, the reasonable limits of an investigation potentially triggered by an EEOC charge define the substantive limits of a subsequent Title VII action. *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981), *vacated on other grounds*, 456 U.S. 955 (1982).

In construing the claims presented, a charge must be liberally construed because it is generally the work of a layman.  *Tillman v. City of Boaz*, 548 F.2d 592, 594 (5th Cir. 1977).  The Fifth Circuit has made it clear that mere procedural technicalities should not bear upon a plaintiff's claim.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).  Therefore, the rule of interpretation of an EEOC charge forming the basis of a judicial complaint is that the limits of a Title VII action are limited to any kind of discrimination related to the charge's allegations. That is, the judicial complaint is limited only by the scope of the EEOC's investigation that could reasonably be expected to grow out of the initial charge of discrimination.  *Id*; *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)(quotation and citation omitted).  Thus, the crucial element of a charge of discrimination is the factual statement contained therein.  *Sanchez*, 431 F.2d at 462.

In her charge filed with the EEOC, Dr. Browning indicated, by checking the appropriate boxes, that she wished to make a charge of discrimination based upon her sex and a charge of violation of the Equal Pay Act. *Plaintiff's response*, **exh. 2.** Dr. Browning did not mark the box associated with a charge of "retaliation". *Plaintiff's response*, **exh. 2.** In her written statement, Dr. Browning stated the basis of her discrimination and disparate pay claims and also stated,

> [a]fter I complained several times of these issues, I was subjected to a hostile work environment in that my work was undermined, as well as credibility with my peers, and in January 2004, I was stripped of my main job responsibilities alleging that I was too aggressive, and talked too much in meetings.

*Id.*

This Court finds this specific written statement included within Dr. Browning's EEOC charge is sufficient to satisfy the requirement of exhaustion of remedies. Although Dr. Browning failed to check the appropriate box marked "retaliation", she described the general nature of this cause of action in the narrative section of the charge. This statement implicates the behavior of SwRI that she now asserts to be the basis of her retaliation claim and gave sufficient indication to the EEOC and SwRI that she was also seeking redress for unlawful retaliation. Thus, based upon this statement, Dr. Browning's retaliation claim could have reasonably grown out of the EEOC investigation into gender discrimination and her claim of constructive discharge.

17

Accordingly, SwRI's motion for summary judgment on Dr. Browning's Title VII retaliation cause of action based upon failure to exhaust administrative remedies does not have merit.

**B.   Protected Activity**

SwRI's second argument in support of its motion for summary judgment on Dr. Browning's retaliation cause of action under Title VII is that she failed to engage in protected activity giving rise to protection from retaliation.   Therefore, SwRI contends Dr. Browning is precluded from asserting this retaliation cause of action as a matter of law.

A plaintiff can establish retaliation with circumstantial evidence under the McDonnell-Douglas framework. ***DiCarlo v. Potter***, 358 F.3d 408, 420 (6th Cir.2004).   Under this burden-shifting analysis, the plaintiff carries the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. ***Patterson v. McLean Credit Union***, 491 U.S. 164, 186 (1989); ***Texas Dep't of Cmty. Affairs v. Burdine***, 450 U.S. 248, 252-253 (1981).   A prima facie case of retaliation requires proof (1) the plaintiff engaged in an activity protected by Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3) the defendant took an employment action against the plaintiff that a reasonable employee would have found materially adverse; and (4) there was a causal connection between the protected activity and the adverse employment action. ***Burlington N. & Santa Fe Rwy. Co.***

18

*v. White*, __ U.S. __, 126 S.Ct. 2405, 2415 (2006); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Walker v. Thompson*, 214 F.3d 615, 628-29 (5th Cir. 2000). With regard to the first prong of this prima facie case, an employee engages in protected activity if she opposes any practice made unlawful by Title VII. **42 U.S.C. § 2000e-(3)(a)**. A formal complaint is not necessary to satisfy the opposition requirement. An employee's informal complaint to a supervisor regarding conduct the employee perceives to be discriminatory is sufficient to satisfy the opposition requirement of Prong One. *See e.g., Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-429 (5th Cir. 2000); *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790-791 (D.C. App. 2001); *Mansfield v. Billington*, 432 F.Supp.2d 64, 73 (D.D.C. 2006). The issue whether an employee engages in protected activity is a question of law. *Carter-Obayuwana*, 764 A.2d at 790.

In her response to the motion for summary judgment and original complaint, Dr. Browning alleges she engaged in protected activity by complaining to her supervisors of disparate salary compared to her male peers. Dr. Browning contends she complained in January 2001, 2002, and 2003 by making a notation on her yearly Performance Evaluations that her pay was not equal to those of her male peers. As evidence to support these allegations, Dr. Browning

submits these Performance Evaluations. *See Plaintiff's response*, **exhs. 39-41.** This evidence shows Dr. Browning wrote in her Performance Evaluation dated January 29, 2002, "I feel, however, I am under-compensated for the nature and extent of the benefits that I bring to the table on behalf of our NRC client, relative to my peers. I ask that you please consider this anew, and find a protocol to make the appropriate salary and status adjustments." *Plaintiff's response*, **exh. 39, SwRI p. 711.** In the same evaluation, Dr. Browning later reiterated this statement verbatim. *Id.* at p. 722. In her deposition, Dr. Browning attests she included with this written statement a survey conducted by the American Chemistry Society that indicated her salary fell below the bottom tenth percentile of typical chemists' salaries. *Id.* at exh. 62, p. 243:13-20; exh. 49. She also attests she noted that female chemists generally earned less than their male counterparts and asked Mr. Pearcy if that was what was happening to her at SwRI. *Id.*

In her Performance Evaluation dated January 21, 2003, after discussing the past year's accomplishments, Dr. Browning wrote, "[t]aking all this into account, please support my promotion to the appropriate level technical position for an extremely accomplished Ph.D. in her eighth year of post-graduate work." *Id.* at exh. 40. Although Dr. Browning contends she wrote notation on the back of this evaluation form, she did not submit evidence of this notation.

*see id*.   In her Performance Evaluation dated January 29, 2004, after discussing the past year's accomplishments, Dr. Browning wrote, "I urge you to please support my immediate promotion and salary adjustment level as described by the SwRI career ladder." **Plaintiff's response, exh. 41.**

This Court finds Dr. Browning's evidence insufficient to raise a genuine issue of material fact whether she engaged in a protected activity to support a retaliation claim.  While informal complaints to a supervisor of any perceived unlawful discrimination might be sufficient to show an employee engaged in a protected activity, Dr. Browning's notations on her yearly performance evaluations do not amount to such informal complaints.  The notations included in Dr. Browning's Performance Evaluations dated 2003 and 2004 do not indicate any complaint relative to pay disparate to her male peers or any other gender-based discrimination.  The notations for these two years indicate only a generic, neutral request for appropriate promotion and salary increase in relation to her education, experience, or contributions to her Division in the particular year.  **See plaintiff's response, exh. 39.**   Therefore, Dr. Browning's neutral notations on these two Performance Evaluations cannot serve as a basis to imply Dr. Browning engaged in an activity protected by Title VII.

Only the notation included on her Performance Evaluation dated January 2003 could be construed as a complaint that she was not

21

paid commensurate with her peers.  ***See plaintiff's response*, exh. 39.**  However, even this complaint does not indicate she attributed this disparity to gender discrimination.  Dr. Browning indicates only that she is under-compensated relative to her peers and requests consideration for appropriate salary and status adjustments.  Even accepting as true Dr. Browning's complaint that she was under-compensated, this conduct is not a practice made unlawful by Title VII, and therefore, Dr. Browning's complaint is not an activity protected by Title VII.

Dr. Browning contends that it must be implied from her comments in all years referenced that she made a gender-based complaint because all of her colleagues and peers at the time of the complaints were male.  However, this Court finds this implication cannot be made based upon the language used in the complaints.  Dr. Browning requests only appropriate promotion and salary adjustment.  While it was clear that Dr. Browning worked in a male dominated field at the time of her complaints, her written notations were insufficient to alert SwRI that she intended to complain about gender-based discriminatory conduct.  The fact that her peers were all male is not enough to derive such an implication.

For these reasons given, this Court finds Dr. Browning has failed to present sufficient summary judgment evidence to raise a genuine issue of material fact whether she engaged in activity

protected by Title VII.  Accordingly, SwRI's motion for summary judgment on Dr. Browning's Title VII retaliation cause of action should be **GRANTED** and this cause of action dismissed.

### III. EQUAL PAY ACT

The Equal Pay Act (EPA) amended the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, to require that all persons performing equal work receive equal pay, unless a difference in pay is justified by reasons other than gender.  **29 U.S.C. § 206(d).**  Although EPA claims are analyzed using a shifting-burdens framework, the analysis is different.  After the plaintiff establishes a prima facie case of discrimination in pay, the burdens of production and persuasion shift to the defendant to show that the difference in pay falls within one of the four affirmative defenses provided in the EPA.  ***Corning Glass Works v. Brennan***, 417 U.S. 188, 196, (1974).  In contrast to claims under Title VII, the burden of persuasion shifts to the defendant after the plaintiff establishes a prima facie case.  ***See Burdine***, 450 U.S. at 253.

To establish a prima facie case of discrimination under the EPA, the plaintiff must show (1) the employer is subject to the EPA; (2) plaintiff performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) plaintiff was paid less than employees of the opposite sex. ***Chance v. Rice Univ.***, 984 F.2d 151, 153 (5th Cir. 1993).  A showing of "equal work" requires only that the plaintiff prove that the

23

skill, effort and responsibility required in the performance of the jobs compared are substantially equal. *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987).  This showing requires plaintiff to show the job requirements and performance were substantially equal, though not necessarily identical, to those of a male employee.  Also, a showing of "equal work" requires a factor-by-factor comparison of the jobs at issue, and the plaintiff must identify at least one male comparator for purposes of the inquiry. *Strag v. Bd. Of Trs. Of Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995).

After the plaintiff establishes a prima facie case, the employer may avoid liability by showing the unequal pay was made pursuant to (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. *See* **29 U.S.C. § 206(d)(1)**; *Brennan*, 417 U.S. at 196.  Because the exceptions to the Equal Pay Act are to be narrowly construed, summary judgment is proper only if the defense is so clearly established that no rational jury could find to the contrary. *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir. 1998)(*citing* *EEOC v. State of Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989)).  Once the employer establishes a defense, the employee may show the purported reason is pretext

for discrimination.  ***Plemer v. Parsons-Gilbane***, 713 F.2d 1127, 1136 (5th Cir. 1983).

SwRI contends Dr. Browning cannot meet her prima facie burden of proof because she cannot satisfy the second prong, that is, she cannot show the skill, effort and responsibility required in the performance of her job compared to those of her named comparators, Drs. Pickett, Turner, Pabalan, and Murphy, are substantially equal. Assuming Dr. Browning could satisfy her prima facie burden of proof, SwRI contends all the named comparators possessed greater experience and more appropriate and applied education to the field of work.  Dr. Browning responds to SwRI's argument by stating only that SwRI

> limits its attack to four individuals named by Browning, a lay person, early in discovery of this matter—before SwRI produced any documents and before Browning could review those same documents to determine with certainty who among her peers were receiving salaries higher than her own.

***Plaintiff's response, p. 51***.  Without presenting any summary judgment evidence to establish her prima facie burden of proof, Dr. Browning contends only that SwRI "has not meet [sic] its summary judgment burden as to Browning's claim that she was paid less than male Research Scientists, Senior Research Scientists, and Principal Scientist Scott Painter....." ***Id***.

Dr. Browning fails to recognize the proper analysis for establishing a violation of the EPA.  The first of the shifting burdens falls upon Dr. Browning to establish a prima facie case.

The second prong of this initial burden requires that Dr. Browning name, with specificity, male comparators who she contends received higher pay, yet performed substantially equal work.  Next, Dr. Browning must show the job requirements and performance of the two jobs were substantially equal; however she received a lower salary than the male counterpart in the comparative job.  In her response, Dr. Browning contests only the comparators used by SwRI in its argument.  However, these are comparators named by Dr. Browning, and she presents no others to be used.  It is Dr. Browning's burden to name proper comparators, not SwRI's.

The summary judgment evidence presented by SwRI shows the named comparators did not hold jobs at the same level as Dr. Browning, but were higher up the career ladder.  ***See defendant's motion,*** **exh. D, pp. 93-94,167-169,174,186,189,191; exhs. M,N,O.** Therefore, the summary judgment evidence before the Court shows the comparators did not hold similar positions, nor are the job and performance requirements substantially equal.  Assuming Dr. Browning attempts to argue that her promotion to a comparable level was suppressed based upon discrimination of her gender, any applicable cause of action is not cognizable under the EPA.

Assuming Dr. Browning attempts to name another comparator, Scott Painter, in her response to the motion for summary judgment, she still fails to satisfy her prima facie burden of proof with regard to this new comparator.  Dr. Browning presents no summary

judgment evidence, nor presents any directive argument from which this Court my find a genuine issue of material fact whether Dr. Painter's job requirements and performance were substantially equal to Dr. Browning's.   The summary judgment evidence presented indicates the contrary.  ***See defendant's motion*, exh. A, p. 77; exhs. M,N,O.**

Even assuming Dr. Browning satisfied her prima facie burden of proof, SwRI presents sufficient summary judgment evidence of a defense allowed under the EPA.   SwRI shows any disparate wage payments to Dr. Browning and the named comparators is based upon their greater experience level and longer seniority.   In her deposition, Dr. Browning admitted that each of the named comparators had more years of experience since their Ph.D. than she did at the relevant time.  ***Defendant's motion*, exh. D, p. 168-169,186-189.**   The evidence further shows Drs. Murphy and Pabalan were hired ten years earlier than Dr. Browning; Dr. Turner was hired eight years earlier, and; Dr. Pickett was hired four years earlier.  ***Id*. at exhs. X,Y,Z,AA.**   This evidence establishes SwRI held a legitimate reason for any disparate salary between Dr. Browning and her comparators, and therefore, it satisfies its burden.   The burden then shifts to Dr. Browning to raise a genuine issue of material fact whether these reasons given are pretext for discrimination.   However, she presents no argument in this regard, and directs this Court to no summary judgment evidence which would

raise a genuine issue of material fact of pretext. For these reasons, this Court finds Dr. Browning has failed to satisfy her burden of proof to avoid summary judgment on this cause of action for violation of the EPA. Accordingly, SwRI's motion for summary judgment on Dr. Browning's cause of action for violation of the EPA should be **GRANTED**, and this cause of action dismissed.

## IV. RETALIATION UNDER THE EQUAL PROTECTION ACT

Dr. Browning also contends SwRI violated the EPA by retaliating against her based upon her complaints of disparate pay. The EPA, through the Fair Labor Standards Act ("FLSA"), prohibits retaliation against an employee who files a complaint, initiates proceedings, or assists in the initiation of proceedings. **29 U.S.C. § 215(a)(3).** To prove his retaliation claim, Plaintiff must prove the same elements that are required under Title VII's three-step *McDonnell Douglas* test. *See James v. MedicalControl, Inc.*, 29 F.Supp.2d 749, 752 (N.D.Tx. 1998); *Hashop v. Rockwell Space Operations Company*, 867 F.Supp. 1287, 1299 (S.D.Tx. 1994). For the same reasons Dr. Browning's Title VII retaliation cause of action fails, her EPA retaliation also fails.

### RECOMMENDATION

It is the recommendation of the Magistrate Judge that defendant's motion for summary judgment be **GRANTED.**

### Instructions for Service and
### Notice of Right to Appeal/Object

The United States District Clerk shall serve a copy of this United States Magistrate Judge's Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Pursuant to Title 28 U.S.C. Section 636(b)(1) and Rule 72(b), Fed.R.Civ.P., any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the district court.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  ***Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge***.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the district court.  ***See Thomas v. Arn***, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation contained in this

Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1413, 1428 (5th Cir. 1996).

**SIGNED** October 6, 2006.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE