**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LAUREN BROWNING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.  SA-05-CA-0245-** |
| | § | **Jury Demanded** |
| **SOUTHWEST RESEARCH** | § | **Judge Biery/Magistrate Primomo** |
| **INSTITUTE,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S OBJECTIONS TO THE
MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE**

TO THE HONORABLE JUDGE FRED BIERY:

## I.  SUMMARY OF ARGUMENT

This is an employment discrimination, retaliation and equal pay case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Equal Pay Act ("EPA"), as amended, by Lauren Browning, Ph.D., a female geochemist and former Research Scientist for Defendant Southwest Research Institute ("SwRI").  Browning brought the instant action because SwRI violated Title VII by failing to promote her and constructively discharging her, violated Title VII and the EPA by paying her at a lower rate of salary than men performing substantially equal or similar jobs, and retaliated against her when she complained of unequal pay and promotion opportunities.  In its Order of August 2, 2006, this Court referred all pretrial matters in the case, including summary judgment proceedings, to United States Magistrate Judge John W. Primomo.

SwRI filed its Motion for Summary Judgment ("Motion") on July 25, 2006.  On October 6, 2006, Magistrate Judge Primomo issued a Memorandum and Recommendation ("Magistrate's Memorandum") relating to SwRI's Motion, and other related pre-trial motions, recommending that SwRI's Motion be granted.

Browning objects to this Memorandum pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules (Appendix C, Rule 4(b)) and urges this Court to reject Magistrate Primomo's recommendation on several grounds.  First, contrary to *Reeves v. Sanderson Plumbing Products, Inc.*[1] and other Supreme Court and Fifth Circuit authority,[2] Magistrate Primomo improperly weighed the evidence in SwRI's favor.  Next, the Court should reject Magistrate Primomo's recommendation to grant summary judgment on Browning's Title VII claims of failure to promote and unequal pay because the Magistrate's Memorandum failed to analyze or address these claims in any way.  Additionally, the Court should reject the recommendation because the Memorandum erred in holding that Browning failed to establish a *prima facie* case of retaliation, constructive discharge and unequal pay under the EPA.

## II.  ARGUMENT AND AUTHORITIES

### The Court Should Reject the Recommendation to Grant Defendants' Motion for Summary Judgment

When reviewing the Magistrate's recommendation on SwRI's Motion for Summary Judgment, the Court must conduct a *de novo* review and apply the summary judgment standard that the Magistrate should have applied in making recommendations on the SwRI's Motion.  *See* 28

---

[1]  530 U.S. 133 (2000).

[2]  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

U.S.C. §636(b)(1)(B); FED. R. CIV. P. 72(b); *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). Magistrate Primomo failed to apply the appropriate summary judgment standard when considering SwRI's Motion, and his recommendation should therefore be rejected.  Magistrate Primomo misapplied the summary judgment burden to Browning's claims or failed to analyze them altogether. Additionally, Magistrate Primomo improperly viewed the evidence by weighing the existing evidence in Defendant SwRI's favor, ignoring facts and inferences that favor Browning, discounting certain evidence presented by Browning, and making fact determinations on key issues that are contrary to the summary judgment evidence and/or were not submitted in the arguments or summary judgment evidence of either party.  As a result, the Magistrate's Memorandum is contrary to the summary judgment standard articulated by the Supreme Court's in *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000), and must be rejected.

> **1.    The Memorandum Erred Because it Recommended Summary Judgment on All of  Browning's Title VII Claims Without Analyzing Browning's Failure to Promote Claim**

The Memorandum recommended that the Court grant SwRI's Motion in its entirety, including SwRI's Motion on Browning's failure to promote and unequal pay claims under Title VII. However, the Memorandum did not even acknowledge, much less analyze, Browning's failure to promote and unequal pay claims.  Had it done so, it would be clear from the facts and evidence presented that Browning established a *prima facie* case of gender discrimination for both claims. The Court should therefore reject Magistrate Primomo's recommendation to grant summary judgment on Browning's Title VII claims.

a.   **The Memorandum Recommended Summary Judgment on All of Browning's Title VII Claims Without Even Providing an Analysis of Browning's Failure to Promote Claim**

The Magistrate's Memorandum erred because it failed to view the summary judgment evidence in the light most favorable to the non-movant, drawing all inferences in Browning's, the non-movant's, favor. *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993). In fact, by recommending that this Court grant SwRI's motion in its entirety, Magistrate Primomo failed to view the evidence <u>at all</u> on Browning's failure to promote claim. The Magistrate's Memorandum incorrectly recommended that Browning cannot overcome SwRI's Motion on her failure to promote claim. The fact is, Browning can and did establish a *prima facie* case of discrimination. Thus, the Memorandum erred in recommending summary judgment on Browning's failure to promote claim.

b.   **Browning Has Established a *Prima Facie* Case of Failure to Promote**

Contrary to the Magistrate's Memorandum and Recommendation, Browning established a *prima facie* case of discrimination for failure to promote. It is undisputed that Browning was female and sought a promotion to Senior Research Scientist. It is also undisputed, and the summary judgment evidence is clear, that SwRI sought candidates for the position of Senior Research Scientist in July 2003.

The summary judgment evidence reveals that Browning established the third element of a *prima facie* case of discrimination – that she was qualified for the position – because the requisition for the position described the job she was already performing at the time the requisition was opened. Critically, the requisition for this position reveals that SwRI sought applicants holding "a Ph.D. in geology, geochemistry, or related field." (Ex. 19, ¶ 13) Browning held a Ph.D. in geosciences – a related field and one encompassing geology and geochemistry studies. (Ex. 27) Further, under

"[k]nowledge, skills and abilities required," the applicants were to "be familiar with geochemical computer modeling practices and theory," "have a good working knowledge of physical chemistry and geochemistry, including mineral solubilities and sorption processes" and "possess excellent written and oral communication skills." (Ex. 19, ¶ 14) Browning used her extensive knowledge of these scientific areas and processes to perform this work for the Nuclear Research Center's proposed Yucca Mountain, Nevada nuclear waste repository. (Exs. 36-41) According to SwRI's published criteria, a successful candidate for the Senior Research Scientist position would have a minimum of five-years of Research Scientist or comparable work experience. (Ex. 9) By July 2003 Browning had more than seven years' post-doctoral experience. (Exs. 27, Ex. 48, ¶ 4, Exs. 36-40) Magistrate Primomo ignored this evidence completely. The Magistrate also ignored evidence showing that SwRI sought candidates through scientific journals such as "EOS" and "Geotimes," internet advertisements, and "professional contacts," (Ex. 19, ¶ 15) The evidence also reveals that SwRI interviewed candidates for the Senior Research Scientist position – an activity easily establishing that SwRI sought applicants with Browning's qualifications to fill the position. ( Sagar dep. 43:4-7, Ex. 64; Ex. 62; Def's Reply Br. Ex. C)

SwRI's position that Browning cannot establish a *prima facie* case runs afoul of Fifth Circuit precedent. In a nutshell, SwRI argues that since it did not award Browning the highest possible performance rating – clearly outstanding – two times consecutively, she was not eligible for promotion and therefore not qualified. The Fifth Circuit has found that subjective criteria, such as performance evaluation rankings, provide opportunities for unlawful discrimination because the criteria itself may be a pretext for discrimination. *Medina v. Ramsey Steel Co., Inc.*, 238 F. 3d 674, 681 (5th Cir. 2001); *Payne v. Travenol Labs, Inc.*, 673 F.2d 798, 827 (5th Cir. 1982) (citing *Fisher*

*v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 544 (5th Cir. 1980); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir. 1997)).  Accordingly, SwRI's subjective criteria (which could also be evidence of pretext) is insufficient[3] to defeat Browning's *prima facie* case.

The Fifth Circuit has held that employers who make promotion decisions based on subjective evaluations by supervisors, all of whom are outside the protected class, "provide a ready mechanism for discrimination."  *Payne*, 673 F.2d at 827 (citing *Fisher*, 613 F.2d at 544;  *James*, 559 F.2d at 330); *see also Crawford*, 614 F.2d 1300, 1315-16 (5th Cir. 1980) (performance evaluations of black employees' "ability, merit, and capacity" by white foremen, where no written evaluation criteria or articulated standard existed, were subjective and did not defeat *prima facie* showing).  The Fifth Circuit has upheld a finding of discrimination in promotions where the employer did not post notice of openings and relied heavily on the recommendations of supervisors in making promotion decisions.  *Payne*, 673 F.2d at 827.

In recommending that SwRI's motion be granted in its entirety, Magistrate Primomo ignored both this Fifth Circuit case law and evidence that SwRI did not post openings to Center employees or provide a vehicle for Browning to apply for such openings.  (Sagar dep. 143:1-7, Ex. 64).  The Magistrate's Memorandum also ignored evidence that Browning's "eligibility" for promotion was determined by an all-male Managers Group.  (Sagar dep. 20:14-14, Ex. 64)  The Magistrate's Memorandum further ignored evidence that the subjective recommendation of Browning's supervisor, English Pearcy, heavily influenced Brownings's chances for promotion.  (Sagar dep. 143:1-7, Ex. 64).  And the Magistrate's Memorandum ignored evidence that even after an employee

---

[3]  In fact, the case law holds that it cannot even be used in this step of the analysis.

became "eligible" for promotion, SwRI could still subjectively deny promotion for any reason at all. (Def.'s Ex. A, p.5, ¶ 10)

The evidence raises a genuine issue of fact as to whether Browning established a *prima facie* case of discrimination for failure to promote. Thus, Browning urges the Court to reject the Magistrate's Memorandum and Recommendation on this issue.

> **2.     The Memorandum Erred Because it Recommended Summary Judgment on All of  Browning's Title VII Claims without Analyzing Browning's Title VII Unequal Pay Claim**

As with Browning's Title VII failure to promote claim, the Magistrate's Memorandum failed to analyze Browning's Title VII unequal pay claim. Again, Magistrate Primomo failed to view the summary judgment evidence in the light most favorable to Browning, drawing all inferences in the non-movant's favor. *Hibernia*, 997 F.2d at 97. By recommending that this Court grant SwRI's motion in its entirety, Magistrate Primomo failed to analyze Browning's Title VII unequal pay claim or view Browning's summary judgment evidence in support of this claim at all. This is error and Browning urges this Court to reject Magistrate Primomo's recommendation accordingly.

> **a.     The Memorandum Erred in Recommending That This Court Grant SwRI's Motion in its Entirety because SwRI did not Satisfy its Summary Judgment Burden with Respect to Browning's Claims that SwRI Paid Her Less than It Paid Comparable Male Research Scientists and Senior Research Scientists**

The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 371, 232, (1986). Only after the movant meets that burden must the non-movant set forth specific facts showing that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). SwRI's Motion failed to show that there is an absence of evidence supporting

Browning's allegation that she was paid less than "male employees with comparable education and experience" (Pl's Original Compl., ¶ 3) who performed jobs similar to, or the same as, her job as Research Scientist. (*Id*. ¶ 15)  It did not, because it cannot.  Even in its reply brief, SwRI did not, and cannot, dispute that Browning lacked evidence that she was paid less than male Senior Research Scientists performing similar jobs to Browning's.  (Def's Reply Br. pp. 20-22)  It did not, and cannot, dispute that Browning was paid less than men holding the exact same position as Browning's.  (*Id*.)

> **b.    The Summary Judgment Evidence Demonstrates that Browning Was Paid Less than Male Research Scientists and Male Senior Research Scientists Who Were Performing A Similar, or the Same, Job**

The Magistrate's Memorandum did not analyze or even address Browning's Title VII unequal pay claim.  Specifically, it did not analyze this claim with respect to male Senior Research Scientists performing similar jobs, or even men performing Browning's exact same job of Research Scientist.  Thus, in recommending that this Court grant SwRI's Motion in its entirety, Magistrate Primomo apparently did not review or chose to ignore Browning evidence that SwRI, in fact, paid Browning substantially less than male Research Scientists and male Senior Research Scientists performing similar or the exact same jobs.  (MR 25-27)  Browning did, in fact, present substantial evidence on these points.  Browning urges the court to reject the recommendation accordingly.

This Court should reject Magistrate Primomo's Memorandum and Recommendation because in recommending that SwRI's motion be granted in its entirety, Magistrate Primomo erroneously concluded that SwRI had satisfied its summary judgment burden.  Even *assuming arguendo* that the summary judgment burden had shifted to the non-movant, Browning set forth specific facts and summary judgment evidence showing the existence of a genuine issue for trial on her unequal pay

claims, including evidence that Browning was a Research Scientist (Exs. 39-41), whose scope of responsibilities and performance consistently exceeded that of other Research Scientists (Pearcy dep. 86:15-21, 87:1-5, 106:10-16, 148:25-149:17, 122:19-123:7, 124:10-125:23, 150:2-151:2, Ex. 63; Ex. 9).   Yet, Browning was paid less than male Research Scientists (Ex. 8; Ex. 20, 2nd RFP SwRI_003316-317; Exs. 22-26), including male Research Scientists hired after SwRI hired Browning (Ex. 8) and/or male Research Scientists lacking a Ph.D. degree.  (Ex. 13).

Likewise, Browning provided evidence of the work performed by Senior Research Scientists and evidence that she was performing work requiring equal skill, effort, and responsibility as the male Senior Research Scientists working in the same division as Browning.  (Pl's Resp. Br., pp. 41-43; Exs. 4, 9, 38-41, 48 ¶¶ 11 & 12; Ex. 60; Pearcy dep. 106:7-107:1, 148:25-149:1)

The facts and evidence that Browning presented raise a genuine issue of material fact regarding her unequal pay claims.  For these reasons, and because Magistrate Primomo did not analyze Browning's Title VII unequal pay claim in the first place, Browning urges this Court to reject the Magistrate's Memorandum and Recommendation.

3.   **The Memorandum Erred in Recommending Summary Judgment on Browning's Retaliation Claim Because the Evidence Raises a Fact Issue Regarding Browning's Participation in a Protected Activity**

a.   **The Memorandum Improperly Weighed the Evidence and Erred in Holding that Notations on Browning's Performance Evaluations were the Only Evidence of Browning's Complaint**

Rather than viewing the evidence, as the courts are charged to do, in the light most favorable to the non-moving party and drawing all inferences in Browning's favor, the Magistrate's Memorandum improperly weighed the evidence in favor of SwRI.   Regarding evidence of Browning's protected activity, the Memorandum notes that "[a]lthough Dr. Browning contends she

9

wrote [a] notation on the back of this evaluation form [Ex. 40], she did not submit evidence of this notation." (MR 20).   However, Browning provided clear and undisputed summary judgment evidence in her affidavit testimony that  "[O]n the back of the performance evaluation I was given in early 2003, I wrote that I believed the appropriateness of management's response to my concerns about my pay being less than my male peers 'warrants scrutiny.' I wrote this because I believed that the actions of management in the Center with respect to my pay was violating a law or a right that I had to equal pay, and because the expression of concern I made in 2001, 2002 and on my self-evaluation in early 2003 appear to have been ignored."  (Ex. 48, ¶ 8) While Magistrate's Memorandum relied without question upon Dr. Wes Patrick's affidavit (*see e.g.,* MR 13, 27,), in contrast, Magistrate Primomo found that Browning's affidavit was not enough and that she must present written evidence.  Magistrate Primomo's requirement that Browning supply evidence above and beyond her testimony is contrary to the summary judgment standard and contrary to *Reeves*, which held that a Court <u>must</u> accept the non-movant's evidence as true and must draw all reasonable inferences in her favor.  *See Reeves*, 530 U.S. at 150.  *Reeves* further held that a court  "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id*. at 151.  This includes evidence from interested witnesses.  *See id*.  That is, the court <u>should give credence to the evidence favoring the nonmovant</u>.  Conversely, the Court <u>must</u> <u>not</u> weigh the evidence or make credibility determinations."  *Id*. at 150-51 (emphasis added).  The Magistrate, in effect, chose to discredit or disbelieve the affidavit testimony of the non-movant.  While a jury may do this, the Court on summary judgment may not.  Magistrate Primomo improperly weighed the evidence, refused to give credence to Browning's evidence, and failed to draw all reasonable

inferences in her favor.  Therefore, Browning urges this Court to reject Magistrate Primomo's recommendation.

> ### b.    The Memorandum Ignored Key Evidence Showing that Browning's Supervisor English Pearcy and President Wes Patrick Knew that Browning's Complaints About Pay and Promotion Opportunities were Gender-Based

Magistrate Primomo ignored several key pieces of evidence showing that Browning's supervisor, English Pearcy, and division president, Wes Patrick, were well aware of Browning's complaint of gender discrimination.  In fact, Magistrate Primomo incorrectly characterized Browning's evidence of her gender discrimination complaints as being limited to her Performance Evaluations.  (MR 19-21)  In doing so, the Magistrate erred by completely disregarding (1) Browning's deposition testimony and (2) the copy of the American Chemical Society salary survey Browning gave to Pearcy when she approached him about gender-based pay inequality.  These are key pieces of evidence and it was clear error to ignore and/or discount such evidence.

In her deposition, Browning's testified about her oral complaints to her supervisor Pearcy about gender-based pay inequality, the American Chemical Society salary survey she gave to Pearcy when making her complaint, and Pearcy's assurances that he would share her complaint with the division management, including its president, Wes Patrick.   The Memorandum incorrectly states that Browning presented only the notations she made on her annual performance evaluations as evidence of her protected activity. (MR 21) ("While informal complaints to a supervisor of any perceived unlawful discrimination might be sufficient to show an employee engaged in a protected activity, Dr. Browning's notations on her yearly performance evaluations do not amount to such informal complaints.")  Rather than giving credence, as it must, to the evidence favoring Browning

11

(*see Reeves*, 530 U.S. at 151), the Magistrate's Memorandum completely ignores Browning's deposition testimony describing how she complained directly to Pearcy about gender discrimination in her pay. After SwRI's counsel questioned Browning on whether she used specific words to complain of gender discrimination, Browning testified as follows:

> Q:    Are there other words you contend you use that would have related the message that you felt you were being discriminated against?
>
> *A:    Yes.*
>
> Q:    What was that?
>
> *A:    In 2001, I -- in my discussion with English Pearcy when I presented to him the graph and the salary survey information, I pointed out to him that women were underpaid relative to men with the same experience in this national survey and in this regional survey, and that I wondered if that was what was happening to me.*
>
> Q:    What did Mr. Pearcy say?
>
> *A:    He said that I was crazy if I thought that.*

(Browning dep. 243:13-20, Ex. 62) (emphasis added)  By ignoring the testimony, the Magistrate failed to consider, and weigh in the non-movant's favor, <u>both</u> evidence of protected activity and evidence of Pearcy's animus in response to Browning' protected activity. The Magistrate's Memorandum also discounted or ignored evidence of the American Chemical Society salary survey (Ex. 49), which Browning showed to Pearcy and to which she refers in the deposition testimony excerpted above. Finally, Magistrate Primomo discounted or ignored deposition testimony in which Browning recounted that Pearcy told her he would take up her complaints – <u>including the salary survey</u> (Ex. 40) – with division president Wes Patrick. (Browning dep., 209:25-210-6, Ex. 62) This evidence, combined with the evidence that Magistrate Primomo did consider – Browning's notations on the performance evaluation – reveals that, year after year, in an environment where Browning was

the <u>only female</u> holding a position of Research Scientist or above (Ex. 43, Ex. 48 ¶10), Browning made a salary complaint to:

    -the same man to whom Browning showed a national salary survey and pointed out that women earned less than men for the same work in their field,

    -the same man who then heard Browning ask whether this was happening to her and

    -the same man who promised to pass along Browning's pay inequality concerns to Patrick.

Browning's evidence clearly raises a genuine fact issue about whether Pearcy had knowledge that Browning's pay and rank complaint was gender-based, and whether Pearcy continued to carry this knowledge each year as Browning renewed her salary concerns.  (*See also* Browning dep. 204:12-205:14, Ex. 62)  Magistrate Primomo ignored this evidence and then refused to draw the reasonable inference that Pearcy knew in 2001, and each year after, that Browning's salary complaint was gender-based.

    Additionally, Magistrate Primomo ignored or discredited evidence that division president Wes Patrick threatened Browning's continued employment (Ex. 48, ¶ 8, Ex. 52) in response to Browning's notation on her performance evaluation that she believed management's response to her concerns about her pay being less than her male peers "warrants scrutiny."  Specifically, after Browning expressed her concerns, Patrick responded by telling her that he could fire her "right then and there, for cause."  (Ex. 48, ¶ 9)  Such evidence raises a fact question regarding Patrick's knowledge that Browning's salary complaint was gender-based.  As a result, there is a genuine issue of material fact regarding whether SwRI knew that Browning was complaining about gender discrimination.

13

### 4. The Memorandum Erred in Recommending Summary Judgment on Browning's Wage Claim Under the Equal Pay Act

#### a. The Memorandum Erred in Holding that SwRI Met its Summary Judgment Burden with Respect to Browning's EPA Claim that SwRI Paid Her Less than it Paid Comparable Male Employees

Magistrate Primomo states that "Browning fails to recognize the proper analysis for establishing a violation of the EPA." (MR 25) However, an analysis of Browning's EPA claim with respect to comparable male employees begins only after a party successfully <u>moves for summary judgment</u> on the claim. The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 232. Only after the movant meets that burden must the non-movant set forth specific facts showing that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 250. SwRI did not show that there is an absence of evidence to support Browning's allegation that she was paid less than "male employees of similar qualifications who performed similar duties." SwRI never argued that Browning was paid comparably to male Senior Research Scientists performing work substantially equal to Browning's. (Def's Reply Br. pp. 20-22) Nor did it argue that Browning was paid comparably to men with the exact same position as Browning's. (*Id.*)

Although the Magistrate's Memorandum analyzed Browning's claim with respect to Principal Scientist Scott Painter,[4] the Memorandum did not even address Browning's claim with respect to male Senior Research Scientists performing work requiring equal (or less) skill, effort, and

---

[4] The Memorandum reads, in part: "<u>Assuming</u> Dr. Browning attempts to name another comparator, Scott Painter, in her response to the motion for summary judgment . . . ." (MR 26) (emphasis added) The Memorandum's language is troubling. In "assuming " what Browning may have included in her response to SwRI's Motion, the language implies that the Memorandum was either written <u>before</u> Browning filed her response brief, or that Magistrate Primomo did not review what Browning actually argued in her response brief. There was no need for an assumption. *See* Browning's Response Brief at p. 51.

responsibility under similar working conditions, or with respect to men holding Browning's same position of Research Scientist.  Thus, the Magistrate's Memorandum apparently concluded that Browning presented no evidence or argument to support her EPA claim.  (MR 25-27)  Such a conclusion is erroneous.  Browning did, in fact, present substantial evidence to support her claim.

### b.      The Memorandum Improperly Imposed a Burden of Identifying Specific Comparators for an EPA Claim

This Court should reject the Magistrate's recommendation that summary judgment be granted on Browning's EPA claim because Magistrate improperly held that Browning was required to "name, with specificity, male comparators who she contends received higher pay, yet performed substantially equal work."  (MR 26)  The Magistrate's Memorandum relied upon a Fourth Circuit opinion in reaching this conclusion.   (MR 24).   However, the Fifth Circuit has not adopted the Fourth Circuit's rule, nor has any court in the Fifth Circuit cited that Fourth Circuit case for the proposition that a plaintiff must identify male comparators by name.  Browning has identified all male Research Scientists and male Senior Research Scientists as the comparators whom she contends received higher pay, yet performed substantially equal work.  (Pl's Resp. Br., pp. 50-51)  Neither the text of the EPA nor binding precedent interpreting the EPA require Browning to individually name these men.  Rather, in EPA cases, the relevant comparison is between the jobs, not the individual employees holding those jobs.  *Lenihan v. The Boeing Co.*, 994 F.Supp. 776, 799 (S.D.Tex. 1998).

### c.      The Memorandum Erred in Holding that Browning Did Not Identify Appropriate Comparators in Her Response

The Magistrate's Memorandum states that other than the comparators mentioned in SwRI's Motion,[5] Browning "presents no others to be used."  (MR 26)  This is incorrect.  Browning's

---

[5] Drs. Pickett, Turner, Pabalan and Murphy.

Complaint alleges that her salary was "less than male employees of similar qualifications who performed similar duties." (Pl's Original Compl., p. 2)  Further, Browning's response brief identifies her comparators as all male Research Scientists, all male Senior Research Scientists, and Scott Painter, a male Principal Scientist. (Pl's Resp. Br., pp. 50-51).  Browning's response brief points out <u>and</u> the summary judgment evidence shows that as of Browning's termination, SwRI paid her a lower salary than four Research Scientists[6] (Ex. 8), at least eight male Senior Research Scientists[7] (Ex. 20) and Scott Painter (Ex. 20).  As discussed in section 1.b. *supra*, Browning was performing work that was similar and/or substantial equal to the work performed by these male Senior Research Scientists.  Further, SwRI does not dispute that Browning was a Research Scientist (Ex. 36-41), whose scope of responsibilities and performance consistently exceeded that of other Research Scientists (Pearcy dep. 86:15-21, 87:1-5, 106:10-16, 148:25-149:17, 122:19-123:7, 124:10-125:23, 150:2-151:2, Ex. 63; Ex. 9).  Browning urges this Court to reject the Magistrate's recommendation accordingly.

> **d.**    **The Memorandum Ignored or Discounted Evidence Demonstrating that Browning Was Paid Less than Male Research Scientists and Male Senior Research Scientists Who Performed Substantially Equal Work**

This Court should reject Magistrate Primomo's recommendation to grant summary judgment on Browning's EPA claim because the Magistrate erred in concluding that SwRI had satisfied its summary judgment burden.  Even *assuming arguendo* that the summary judgment burden had shifted to the non-movant, Browning set forth specific facts and evidence showing the existence of a

---

[6]  Dorel Marius Necsoiu, Darrell Sims, Kevin Smart, and Bradley A. Werling.

[7]  Franklin Bertetti, Kuang-Tsan K Chiang, David Farrell, Brittain E. Hill, Ronald Janetzke, Patrick LaPlante, Osvaldo Pensado-Rodriguez, and James Prikryl.

genuine issue for trial on her EPA claim including evidence that Browning was a Research Scientist (Ex. 36-41), whose scope of responsibilities and performance consistently exceeded that of other Research Scientists (Pearcy dep. 86:15-21, 87:1-5, 106:10-16, 148:25-149:17, 122:19-123:7, 124:10-125:23, 150:2-151:2, Ex. 63; Ex. 9).  Yet, Browning was paid less than four male Research Scientists (Ex. 8; Ex. 20, 2nd RFP SwRI_003316-317; Exs. 22-26), including male Research Scientists hired after SwRI hired Browning (Ex. 8) and/or male Research Scientists lacking a Ph.D. degree, which Browning held.  (Ex. 13).

Browning's brief in response to SwRI's Motion described the work performed by Senior Research Scientists and set forth the facts and evidence supporting her claim that she performed work requiring equal skill, effort, and responsibility as the male Senior Research Scientists working in the same division.  (Pl's Resp. Br., pp. 41-43; Exs. 4, 9, 38-41, 48 ¶¶ 11 & 12; Ex. 60; Pearcy dep. 106:7-107:1, 148:25-149:1)  At a minimum, the facts and evidence Browning presented in her response brief raise a genuine issue of material fact regarding her EPA claim.

### 5.     The Memorandum Erred in Finding that Browning Did Not Established a *Prima Facie* Case of Constructive Discharge

The Magistrate's Memorandum erred in recommending summary judgment on Browning's constructive discharge claim for numerous reasons.  First, Magistrate Primomo discounted or ignored evidence Browning presented to establish aggravating factors.  Next, based on the evidence the Magistrate did consider, he improperly viewed it in the light most favorable to SwRI, rather than Browning.  The Magistrate's Memorandum even went so far as to construct arguments and/or justifications for SwRI's position that SwRI itself had not raised.  The Memorandum also ignored an entire portion of Browning's arguments and the related evidence Browning presented to support

her constructive discharge claim.  Finally, Magistrate Primomo viewed each event Browning presented in support of her constructive discharge claim as a independent act that did not rise to the level of constructive discharge, and thus failed to view the totality of the circumstances.[8]

### a.    The Memorandum Ignored or Discounted Critical Summary Judgment Evidence Presented by Browning

The Magistrate's Memorandum incorrectly stated that the only evidence in support of Browning's constructive discharge claim was her affidavit, her handwritten notes regarding the events, and documents from her personnel file.  (MR 11)  Magistrate Primomo also concluded that such evidence provided insufficient support for her claim, apparently because they recorded only Browning's perception of the events.  (MR11-12)  At the same time, Magistrate Primomo accepted the perceptions that SwRI's witnesses presented in their affidavits and/or depositions as acceptable summary judgment evidence.  (*See, e.g.,*MR 13, 27)  Here, Magistrate Primomo once again improperly weighed the evidence, refused to give credence to Browning's evidence, and failed to draw all reasonable inferences in Browning's favor.  Rather, the Magistrate's Memorandum rejected Browning's evidence, and, instead viewed the evidence and drew all inferences in SwRI's favor. Further, in stating that Browning's only evidence was limited to her affidavit, handwritten notes and notes from her personnel file, the Magistrate's Memorandum overlooked or discounted entirely the following evidence: (1) English Pearcy's deposition testimony (Ex. 63), (2) Browning's deposition

---

[8]  Magistrate Primomo engages in a *McDonnell Douglas*-like burden-shifting analysis of each event cited in support of Browning's claim is a radical departure from the standard set out by the Fifth Circuit in *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 371-72 (5th Cir. 1981).  Rather than determine whether a reasonable employee in Browning's position would have been compelled to resign, Primomo sets up the constructive discharge analysis as a *McDonnell Douglas* analysis.  Once Browning presents facts and evidence of an event in support of aggravating factor, the Magistrate analyzed whether SwRI had any justification for the event alleged, apparently mimicking the second prong of the *McDonnell Douglas* analysis.  Magistrate Primomo did not, however, carry out this improper burden-shifting analysis so far as to determine whether the justification for SwRI's position was pretext.

testimony (Ex. 62), (3) Emails from Pat Mackin to Browning (Ex. 42), (4) Pat Mackin's deposition testimony (ex. 67), (5) Budhi Sagar's deposition testimony (Ex. 64), and (6) the Performance Evaluation of Brittain Hill (Ex. 17).  As discussed below, all of the evidence above, which the Magistrate's Memorandum ignored or discounted, raises genuine issues of material fact regarding aggravating factors and constructive discharge.

                                                  *i.*       *The Magistrate's Memorandum Discounted Evidence That Wes Patrick Threatened Browning's Job*

Although the Magistrate's Memorandum mentioned the event in which Wes Patrick confronted Browning about her complaints of salary inequity, it misstates the evidence.  Patrick <u>threatened to terminate Browning</u>.  Instead of interpreting it in the light most favorable to Browning, all the Memorandum acknowledged is "the alleged incident with Wes Patrick was believably intimidating and humiliating . . . ." (MR 12)  It never acknowledged that Patrick, the president of Browning's division, directly threatened Browning's continued employment at SwRI.  (MR 12)  Summary judgment evidence that SwRI threatened to terminate Browning's employment is evidence of an aggravating factor, which courts in the Fifth Circuit consider in making a determination on a constructive discharge claim.  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.); *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292 (5th Cir. 1997).  The Memorandum's failure to properly consider the evidence is erroneous.

                              *ii.*     *The Magistrate's Memorandum Discounted Evidence that Pat Mackin Verbally Abused Browning and Subjected Her to an Extra Level of Scrutiny Not Imposed on Male Employees*

The Magistrate's Memorandum failed to consider the evidence Browning presented that the Director of Administration, Pat Mackin, subjected Browning to verbal attacks and an extra layer of

scrutiny that he did not impose on male employees.  (MR 11-14)  This evidence goes directly to the existence of aggravating factors.  The evidence shows that Mackin subjected Browning to a verbal tirade.  (Ex. 55)  Mackin shouted at her and banged his fists on the desk in a threatening manner. (Ex. 55)  Mackin e-mailed Browning and her supervisors, stating that Browning would be subject to "an extra level of scrutiny" in reviewing <u>all</u> her travel requests  (Ex. 42, Ex. 55) and that he admitted keeping a closer watch on Browning than he did the other (at that time, all male) scientists. (Mackin dep. 51:5-18, Ex. 67)  The evidence also reveals that Mackin admitted he did not bother to discover that Browning's travel costs allegedly in excess of per diem on a particular trip had actually been approved by the Technical Director prior to her trip.  (Mackin dep. 50:23-51:8, Ex. 67). Mackin also testified he did not subject men to verbal attacks or heightened scrutiny on future travel requests when they exceeded per diem rates.  (Mackin dep. 52:19-53:24, Ex. 67).

This evidence, which Magistrate Primomo ignored or discounted, raises genuine issues of material fact regarding aggravating factors and constructive discharge.  It also raises a genuine issue of material fact SwRI treated Browning differently from her male co-workers.[9]

> iii.   *The Magistrate's Memorandum Discounted Evidence that SwRI did not Allow Browning to Apply for the Senior Research Scientist Position which She Sought*

The Magistrate's Memorandum dispensed with additional evidence of aggravating factors stating that "while Browning may present evidence she was not asked to apply for, or was not considered for, several promotion positions, she fails to show she was prevented in any way from applying."  (MR12)  This is incorrect and ignores evidence presented by Browning.  The evidence

---

[9]  Contrary to Magistrate Primomo's finding that Browning's evidence did not raise a fact issue regarding disparate treatment.  (MR11)

reveals that SwRI did not post an opening for which Browning could apply.  (Sagar dep. 143:1-7, Ex. 64)  SwRI's own testimony clearly explains that it does not make promotions available through the traditional process of a position opening and candidates applying for the position.  (Def.'s Ex. A, pp. 4-5, ¶ 10)  Therefore, Browning was prevented, both by lack of notice and lack of procedure, from submitting a formal application for the position.  In determining, *sua sponte* and incorrectly that Browning was not prevented from applying for a Senior Research Scientist position, the Magistrate improperly discounted evidence raising a genuine fact issue regarding aggravating factors that support Browning's constructive discharge claim.

> iv.  *The Magistrate's Memorandum Discounted Evidence that Pearcy did not Follow Protocol in Removing Browning from Her Position as ISI Technical Lead and that Browning Suffered a Loss of Job Responsibilities After the Removal*

The evidence reveals that when Pearcy removed Browning from her position as ISI technical lead, he did not follow the usual protocol of consulting other managers and directors before effecting the removal.  (Pearcy dep. 154:12-15, 155:9-11, Ex. 63)  Perhaps even more important, Browning presented evidence that she experienced a loss in job responsibility when Pearcy removed her from the ISI lead.  Pearcy admitted Browning lost job responsibilities and that these losses were not replaced with new responsibilities (Pearcy dep. 169:23-170:2, 5-7, Ex. 63)  The Magistrate's Memorandum improperly ignored or discounted this evidence of a clearly aggravating factor – that SwRI reduced Browning's job responsibilities.

> v.  *The Magistrate's Memorandum Discounted Evidence that Pearcy and Patrick Badgered, Humiliated and Harassed Browning*

Even though the Memorandum acknowledged that "the incident with Wes Patrick was believably intimidating and humiliating" (MR 12) it failed to consider this as an aggravating factor.

21

The Memorandum simply ignored other evidence, such as the incident where Browning raised concerns that she was underpaid because she was female:  Pearcy replied that she was crazy if she thought that.  (Browning dep. 243:13-20, Ex. 62)  When Browning raised her concerns again, Pearcy pointed to the door and told her if she did not like it, "There's the door."  (Ex. 50)  This evidence, which Magistrate Primomo improperly ignored or discounted, raises a genuine issue of material fact regarding aggravating factors that support Browning's constructive discharge claim.

> vi.   *The Magistrate's Memorandum Discounted Evidence that SwRI Downgraded Browning's Performance Ratings, But did not Penalize Male Co-Workers' Performance Ratings for the Same Alleged Faults*

The Memorandum further erred in failing to recognize that SwRI's downgrading of Browning's performance ratings, effectively ensuring that  Browning would never be promoted, raises a genuine issue of material fact.  Instead, the Magistrate stated that Browning "presents no evidence to show they [the performance evaluations] were not accurate or that she would have been otherwise eligible for a better rating . . . ."  (MR 13).  Since it is well-established that subjective evaluation systems are a vehicle for discrimination,[10] it was improper for the Magistrate to impose on Browning the burden of proving the inaccuracy of SwRI's subjective evaluation rankings. Moreover, the Magistrate's Memorandum discounted or ignored summary judgment evidence revealing that male scientists were not penalized, and received "clearly outstanding" performance ratings, when they engaged in conduct for which Browning's ratings were lowered.  (Ex. 16) As a result, the Magistrate's Memorandum improperly discounted this element as an aggravating factor

---

[10]   *Payne v. Travenol Labs, Inc.*, 673 F.2d 798, 827 (5th Cir. 1982) (citing *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 544 (5th Cir. 1980); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310,330 (5th Cir. 1997))*; Robinson v. PPG Indus., Inc.*, 22 F.3d 1159, 1164 (7th Cir.)

supporting Browning's constructive discharge claim.  Browning urges this Court to reject the recommendation accordingly.

> ### b.   The Memorandum Improperly Viewed the Evidence in Favor of SwRI Instead of Viewing the Evidence and Inferences in the Light Most Favorable to Browning

The Memorandum refused to consider Browning's removal as the ISI lead an aggravating factor because one SwRI witness claimed that Browning was relieved of this responsibility based on her alleged inability to give the project focused attention.  (MR 11-12)  However, Browning presented conflicting evidence that Pearcy told Browning she was being removed as the ISI lead because she "talked too much" at meetings and "took too much credit" for the work done in the ISI.[11]  (Ex. 56).  Rather than considering all the evidence and viewing it in the light most favorable to Browning, the Magistrate favored the evidence presented by SwRI.  This improper weighing of evidence and misapplication of the summary judgment standard is error, and runs contrary to the Supreme Court's ruling in *Reeves*.  Browning urges this Court to reject the recommendation for summary judgment accordingly.

Even more disturbing is that the Magistrate further failed to apply the appropriate summary judgment standard by constructing an argument on SwRI's behalf.  The Magistrate held that the fact that SwRI required Browning to interview her replacement could not be evidence of an aggravating factor "because at that time, [Browning] did not know she would resign . . ."  (MR 12)  Nowhere in the record is there any evidence that Browning had not, at that point, determined that her circumstances were becoming so intolerable that she might be forced to resign.  It was improper for

---

[11]  The reasons Pearcy expressed to Browning during the January 30, 2004 telephone conversation documented by Browning in Exhibit 56 are reflected in Pearcy's own notations at Exhibit 11 (SwRI_001532).

Magistrate Primomo reach such a conclusion because there is no evidence in the record to support it.  It merely shows the extent to which the Magistrate's Memorandum improperly favored SwRI and, where it could not favor SwRI's evidence, it constructed SwRI's evidence.

>   **c.**     **The Memorandum Ignored Important Arguments and Key Evidence Supporting Browning's Constructive Discharge Claim**

The Magistrate's Memorandum completely overlooked an entire argument presented by Browning in support of her constructive discharge claim, and its attendant evidence: that SwRI paid Browning significantly less than it paid her male co-workers who were, like Browning, Research Scientists or Senior Research Scientists performing the same work as Browning.  Magistrate Primomo concludes that "incidents based in disparate treatment must be disregarded."  (MR 11) Although discrimination, on its own, does not establish constructive discharge, its existence, along with aggravating factors such as those presented by Browning  – a reduction in job responsibilities and badgering, humiliation and harassment calculated to encourage the employee's resignation[12] – support a finding that there is a genuine issue of material fact.  Therefore, Magistrate Primomo erred in discounting this evidence when analyzing Browning's constructive discharge claim.

>   **e.**     **The Memorandum Improperly Analyzed Browning's Evidence of Aggravating Factors**

The standard for establishing a whether a resignation constitutes constructive discharge is a straight-forward one – the plaintiff must produce evidence that her working conditions were so intolerable that a reasonable employee would feel compelled to resign.  *Brown v. Bunge Corp.*, 207 F.3d 776, 72 (5th Cir. 2000).  The courts consider whether a plaintiff has presented aggravating factors to aid in the inquiry.  *Id.*; *Jackson v. Univ. of Tex as M.D. Anderson Cancer Ctr.*, No. 01-

---

[12] *See* Pl's Resp. Br. pp. 20-28.

21233, 54 Fed. Appx. 404 (5th Cir. Oct. 23 2002) (citing *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292 (5th Cir. 1997).

Magistrate Primomo improperly added a new layer to the analysis. Browning listed a series of events as aggravating factors supporting her constructive discharge claim. To this, the Magistrate applied – improperly – an analysis of SwRI's likely justification for its actions in each of the events. This approach is inapplicable to a constructive discharge analysis. For example, it is black letter law that when an employer tells and employee she will be fired unless she resigns, this <u>is</u> constructive discharge. *See, e.g., Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir. 1997); *Hunt v. Western Extrusions Corp.,* 2000 WL 1478656 (N.D. Tex. 2000); *Burks v. Oklahoma Publishing Co.,* 81 F.3d 975, 978 (10th Cir. 1996); *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001) (citing *Faruki*, 123 F.3d at 319). The analysis does not permit an inquiry about whether that ultimatum was warranted, at least not at the *prima facie* level, The adverse action is established by showing that the ultimatum occurred. Only then does the focus shifts to whether the termination is for a non-discriminatory reason. Similarly, the proper analysis does not permit an inquiry about whether each event in a series was warranted. The adverse action is established by the totality of the series of events. Only once the court determines that *prima facie* constructive discharge occurred is it proper to shift the focus to whether SwRI had non-discriminatory reasons for its conduct.

Browning laid out numerous events providing evidence of aggravating factors in support of her constructive discharge. For each one, Magistrate Primomo improperly analyzed whether SwRI's conduct was warranted, sometimes naming justifications that SwRI itself failed to articulate. For instance, Browning presented evidence that SwRI removed her from the Q&C ISI lead and substantially reduced her job responsibilities. (Pl's Resp. Br. pp. 22) Magistrate Primomo held that

the event cannot be an aggravating factor because SwRI had a reason for removing Browning from the lead position. (MR 11-12). Browning presented evidence that her supervisor, Pearcy, kept a secret file in which he placed note regarding Browning without informing Browning that he was papering her file. (Pl's Resp. Br. 24-25). Magistrate Primomo ignored that Browning had knowledge of Pearcy keeping secret files on other employees (Ex. 56) and erroneously presumed that because Browning did not know the contents of the notes Pearcy kept on her in the file, that she did not know of the file's existence and could not have been humiliated by it. (MR 12). Browning presented evidence that SwRI opened a position for a Senior Research Scientist doing the work that Browning currently performed, SwRI management did not provide a vehicle by which Browning could apply for the job, and SwRI forced her to interview applicants for the job. (Pl.'s Resp. Br. pp. 21-22) Magistrate Primomo, ignoring and discounting Browning's evidence as discussed above, incorrectly stated that SwRI had not prevented Browning from applying and that Browning could not have known she was interviewing her replacement. (MR 12) Browning presented evidence that, based on highly subjective, and unwritten, evaluation criteria SwRI artificially suppressed the performance evaluations ratings for Browning and not male scientists. (Pl.'s Resp. Br. pp. 23-24) Magistrate Primomo determined that SwRI's actions were not evidence of an aggravating factor – unless Browning could prove that her performance evaluations were not accurate. (MR 13)

For each of the events that Magistrate Primomo chose to analyze,[13] the Magistrate found a reason why SwRI's action was justified[14] and eliminated the aggravating factor from the constructive

---

[13] The Magistrate's Memorandum overlooked much of the evidence Browning presented. *See* section 5.a. *supra*.

[14] Unfortunately for Browning, the Magistrate did not reflect on whether any of these justifications were pretext for discrimination.

discharge consideration.  In this way, the Magistrate improperly whittled away Browning's evidence of *prima facie* constructive discharge, rather than determine whether all these events together would have compelled a reasonable employee to resign.  This resulted in a premature and improper burden-shifting at the *prima facie* level of Browning's constructive discharge claim.  This is error and Browning, therefore, urges this Court to reject the Magistrate's recommendation.

     **f.**    **The Memorandum Failed to View the Totality of All the Events and Improperly Analyzed Each Event Separately with Respect to Whether the Event Supported Browning's Constructive Discharge Claim**

The Memorandum failed to analyze the totality of the circumstances supporting Browning's constructive discharge claim.  Instead, the Memorandum improperly considered each event separately.  As described in section 5.e. *supra*, it also appears to perform a *McDonnell Douglas*-like burden-shifting analysis for each event Browning presented as evidence of aggravating factors supporting her claim.  Through this process, the Memorandum took apart each event and discounted it as being insufficient to support a constructive discharge claim.  Having done so, <u>and having viewed the evidence in favor of SwRI instead of Browning</u>, the Memorandum erroneously concluded that the evidence failed to raise a genuine issue of material fact regarding Browning's constructive discharge claim.  In constructive discharge cases, however, the totality of a series of events is sufficient to create an intolerable situation.  *Brown v Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (discharge factors are considered "singly or in combination"); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429-30 (5th Cir. 1992) *Jackson v. Univ. of Texas M.D. Anderson Cancer Ctr.*, No. 01-21233, 54 Fed. Appx. 404 (5th Cir. Oct. 23, 2002).  After improperly discounting all the evidence of aggravating factors supporting Browning's constructive discharge claim, the Memorandum effectively concluded that no series of events existed.  The effect of the Magistrate's approach to

27

Browning's constructive discharge evidence is this: It treats Browning the same as if she had presented only one (not many) aggravating factor in support of her claim to constructive discharge. A constructive discharge claimant who has many aggravating factors (badgering, threats, discriminatory pay, discriminatory evaluations, suggestions that she quit, removal from a lead assignment) has a stronger claim of constructive discharge (indeed, one that is worthy of jury consideration) than a constructive discharge claimant who has evidence of only one aggravating factor. By discounting Browning's evidence through this device (failure to consider the totality of the factors that led her to resign), the Magistrate violated the role of the judge in the summary judgment process. Browning's evidence is to be credited and given all reasonable inferences, not dissected and discounted. Browning therefore urges this Court to reject the Magistrate's recommendation for summary judgment.

## III. CONCLUSION

WHEREFORE, for the above and foregoing reasons, as well as those reasons fully briefed in the prior summary judgment pleadings and briefs, the Court should reject Magistrate Primomo's recommendations, deny Defendant's Motion, and grant Browning any further relief the Court deems appropriate.

Respectfully submitted,

GILLESPIE, ROZEN, WATSKY, MOTLEY & JONES, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas  75204
Phone: (214) 720-2009
Fax:     (214) 720-2291


By: /s/ M. Jeanette Fedele
   Hal K. Gillespie
   State Bar No. 07925500
   M. Jeanette Fedele
   State Bar No. 24040887


BARON AND BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
   Steve Baughman Jensen
   State Bar No. 00783615

TRIAL LAWYERS FOR PUBLIC JUSTICE, P.C.
1825 K Street, N.W., Suite 200
Washington, D.C. 20006
Phone  (202) 797-8600
Fax  (202) 232-7203
   Adele P. Kimmel
   District of Columbia Bar No. 412612

29

LAW OFFICES OF GAUL AND DUMONT
111 Soledad, Suite 725
San Antonio, Texas 78205
(210) 225-0685
(210) 271-9557 - Fax
     Malinda A. Gaul
     State Bar #08239800

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 23rd day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

  Cynthia Michelle Benedict
  Stephen J. Romero
  Fulbright & Jaworski
  300 Convent Street, #2200
  San Antonio, TX 78205

  Malinda A.Gaul
  Law Offices of Gaul and Dumont
  105 South Street Mary's, Suite 950
  San Antonio, Texas 78205
  malindag@swbell.net

  Adele P. Kimmel
  Trial Lawyers for Public Justice, P.C.
  1825 K Steet, N.W., Suite 200
  Washington, D.C. 20006
  AKIMMEL@TLPJ.ORG

and I hereby certify that a true and correct copy of the foregoing was forwarded on this the 23rd day of October, 2006, in the following manner to:

  ***Via E-Mail***
  Steve Baughman Jensen
  Baron And Budd, P.C.
  3102 Oak Lawn Avenue, Suite 1100
  Dallas, Texas 75219
  sjensen@baronbudd.com

        /s/ M. Jeanette Fedele
        M. Jeanette Fedele